Todd Edward EDMONDS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2004–SC–1003–MR.

Supreme Court of Kentucky.

April 20, 2006.

Shannon Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Bryan D. Morrow, Office of the Attorney General, Frankfort, Counsel for Appellee.

COOPER, Justice.

Pursuant to RCr 8.08, 8.09, and *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), Appellant, Todd Edward Edmonds, pled guilty in the Jefferson Circuit Court to two counts of rape in the first-degree, KRS 510.040(1)(a), two counts of sodomy in the first-degree, KRS 510.070(1)(a), two counts of burglary in the first-degree, KRS 511.020, one count of kidnapping, KRS 509.040, one count of robbery in the first-degree, KRS 515.020, one count of unlawful imprisonment, KRS 509.020, two counts of wanton endangerment, KRS 508.060, one count of failure to notify the Division of Probation and Parole of a change of address, KRS 17.510, and to being a persistent felony offender in the first degree, KRS 532.080(3). Under the plea agreement, the sentence for each count was enhanced to twenty years because of the persistent felony offender status, and all sentences were to run concurrently for a total of twenty years.

He now appeals the final judgment entered pursuant to his guilty plea as a matter of right, Ky. Const. § 110(2)(b), charging the trial court with reversible error for overruling (1) his motion to sever the counts with respect to each victim; (2) his motion to continue his jury trial indefinitely pending completion of his treatment for hepatitis-C; and (3) his motion to withdraw his guilty plea prior to sentencing on the basis that it was not voluntary and intelligent. Finding no error, we affirm.

## I. FACTS.

Appellant was indicted on October 15, 2001, based on alleged offenses against two women. The factual bases underlying all counts to which Appellant pled guilty are

as follows. On June 4, 2001, the first victim, D.P., reported to Jefferson County police that a man she identified as Appellant persuaded her to invite him into her home, at which point he tied her to her bed and forcibly raped and sodomized her, then remained in her home throughout the evening. On August 21, 2001, the second victim, D.M., reported to Jefferson County police that a man she identified as Appellant persuaded her to invite him into her home, at which point he bound her and forcibly raped and sodomized her. He then briefly tied D.M. to a clothes rack, then untied her and forced her at knifepoint to drive him to an A.T.M. (automatic teller machine) and withdraw $300 from her bank account. After he took this money, he forced her to drive him to a different location, at which point he exited her vehicle.

On both occasions, Appellant allegedly committed the sexual offenses without using prophylactics despite knowledge that he was infected with hepatitis-C, a communicable disease.[1] The Commonwealth stated that it would present evidence from the rape kits of both victims to show that DNA evidence from each crime scene matched Appellant's DNA. At the time of both offenses, Appellant was a convicted felon and sex offender, and he had not registered the address of his residence as required by KRS 17.510.

After several delays and a change of defense counsel, a jury trial was scheduled for February 23, 2004. Prior to trial, the Commonwealth offered Appellant a plea agreement under which he would enter a conditional *Alford* plea to all counts and would be sentenced to twenty years in prison. On the morning of trial, after the trial court ruled on twenty-three *pro se* motions filed by Appellant the previous day, Appellant accepted the Commonwealth's plea offer, maintaining his innocence but pleading guilty and reserving the right to appeal all adverse rulings.

## II. SEVERANCE.

■ Appellant moved the trial court to sever all counts in the indictment relating to the two different victims on grounds that the two alleged offenses occurred eleven weeks apart and that the evidence of both offenses together would have a cumulative effect that would amount to undue prejudice.[2] The Commonwealth responded that no unfair prejudice would result and further explained that the "prejudicial" evidence regarding the separate offenses would be introduced into each trial under KRE 404(b) even if Appellant's motion to sever was granted, thus the joinder of offenses was not prejudicial. After hearing argument from both sides, the trial court overruled the motion. We review a trial court's ruling on a motion to sever for an abuse of discretion. *Foster v. Commonwealth*, 827 S.W.2d 670, 679–80 (Ky.1991); *Boggs v. Commonwealth*, 424 S.W.2d 806, 808 (Ky.1966); *Smith v. Commonwealth*, 375 S.W.2d 819, 820 (Ky.1964).

■ Criminal Rule (RCr) 9.16 states that a trial court shall order separate trials for counts in an indictment "[i]f it appears that a defendant . . . will be prejudiced by a joinder of offenses." A criminal defendant is entitled to a severance only upon a showing, prior to trial, that joinder would be unduly prejudicial. *Humphrey v. Commonwealth*, 836 S.W.2d 865, 868 (Ky.1992);

---

1. This fact formed the basis for the two counts of wanton endangerment.

2. The trial court did sever the count for failure of a convicted sex offender to notify the Division of Probation and Parole of a change of address, KRS 17.510, from the remaining counts because of the likelihood of undue prejudice.

*Ware v. Commonwealth*, 537 S.W.2d 174, 176–77 (Ky.1976); *Edwards v. Commonwealth*, 500 S.W.2d 396, 397–98 (Ky.1973). "A significant factor in identifying such prejudice is the extent to which evidence of one offense would be admissible in a trial of the other offense." *Rearick v. Commonwealth*, 858 S.W.2d 185, 187 (Ky. 1993); *see also Spencer v. Commonwealth*, 554 S.W.2d 355, 357 (Ky.1977).

■ The Commonwealth correctly noted that any potentially prejudicial evidence of the acts committed against the separate victims would be admissible in each prosecution, if severed, under KRE 404(b). Kentucky Rule of Evidence 404(b) states that evidence of other crimes, wrongs, or acts committed by a defendant is admissible to prove, *inter alia*, the intent or identity of the perpetrator. *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky.2002); *Funk v. Commonwealth*, 842 S.W.2d 476, 481 (Ky.1992). Evidence of other bad acts to prove intent or identity by *modus operandi* must generally be so similar as to constitute a "signature crime." *See Commonwealth v. Maddox*, 955 S.W.2d 718, 722 (Ky.1997); *Rearick*, 858 S.W.2d at 187–88. However, "a number of common features of lesser uniqueness, although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together." *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977); *see also Dickerson v. Commonwealth*, 174 S.W.3d 451, 468–71 (Ky.2005).

■ Whether Appellant's defense to the charges was identity (*i.e.*, that someone else committed the alleged offenses) or intent (*i.e.*, the intercourse was consensual), evidence of the acts committed against each victim would be admissible in a separate trial for the offenses committed against the other. The facts of each offense in the case *sub judice* are strikingly similar: Appellant, who identified himself to each victim as "Todd," approached each victim outside her home and elicited an invitation into her home through the guile of his feigned friendship; once inside, with the victim's back turned, Appellant attacked. Appellant bound each victim with articles of her own clothing; Appellant first vaginally raped, then anally sodomized each victim; Appellant threatened the life of each victim if she reported the crime to the police; and each victim described similar tattoos on her assailant and identified Appellant from a police photo-pack following the attack. "[I]t is not the commonality of the crimes but the commonality of the facts constituting the crimes that demonstrates a modus operandi." *Dickerson v. Commonwealth*, 174 S.W.3d at 469. The commonality of the facts of the offenses committed against each victim, though not exceedingly unique when considered independently, "indicate a reasonable probability that the crimes were committed by the same person." *Lear v. Commonwealth*, 884 S.W.2d 657, 659 (Ky.1994).

Our courts have held comparable evidence admissible under KRE 404(b). *See, e.g., Furnish v. Commonwealth*, 95 S.W.3d 34, 47 (Ky.2002) (evidence of previous burglary where employment as carpet cleaner provided guise for entry into home held admissible in murder prosecution where entry into victim's home allegedly achieved through same); *Violett v. Commonwealth*, 907 S.W.2d 773, 775–76 (Ky.1995) (denying severance) ("He began improperly touching the daughter when she was eleven years old and he improperly touched the stepdaughter when she was twelve years old. In both situations, the touching escalated into improper sexual rubbing of the victims' bodies and digital penetration. Both victims testified that he ultimately raped them. The method of gaining ac-

cess to both children was very similar. Each victim was a member of the household at the time the misconduct occurred. The defendant would get each child alone in the bedroom, or gain access to the victims by approaching them in the bathroom when they were getting ready or taking a shower. He also warned each victim not to tell anyone about the incidents."); *Berry v. Commonwealth,* 84 S.W.3d 82, 88 (Ky.App.2001) (denying severance) ("[T]he earliest offense charged in the 1998 indictment occurred in December 1977, and the latest offense in that indictment occurred in 1980. The ten counts in the 1998 indictment were committed on five different victims. The 2000 indictment charged that Berry committed the same criminal act as in the first indictment—third-degree sodomy—on another victim in 1982, and again in 1986. In every instance, the crime involved a boy under the age of sixteen who was participating in Micro City Government. All twelve instances of third-degree sodomy occurred in Berry's home while he was there alone with each boy.") (footnote omitted). Thus, evidence of the acts committed against each victim would have been admissible in Appellant's separate prosecutions for offenses committed against the other had the trial court granted his motion to sever. Nor does the lapse of eleven weeks between the separate offenses warrant severance. *Violett,* 907 S.W.2d at 775–76 (four years); *Berry,* 84 S.W.3d at 88 (multiple offenses against multiple victims committed over nine-year period). As such, Appellant was not unduly prejudiced by the denial of his motion. *Humphrey,* 836 S.W.2d at 868.

## III. CONTINUANCE.

During pretrial motions, Appellant moved the trial court to continue his prosecution indefinitely pending his treatment for hepatitis-C on grounds that the medications prescribed for treatment impaired his ability to participate meaningfully in his own defense. Criminal Rule (RCr) 9.04 provides that "[t]he court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial." Whether to grant a continuance under RCr 9.04 "rests solely within the court's discretion." *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky.1991), *overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky.2001); *see also Williams v. Commonwealth,* 644 S.W.2d 335, 336 (Ky.1982). When ruling on an RCr 9.04 motion, a trial court should consider the facts of each case, especially, *inter alia,* "length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; ... complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Snodgrass,* 814 S.W.2d at 581.

Appellant argues that the side effects from his medication constituted identifiable prejudice that necessitated an additional continuance. During a pretrial motion to continue the trial indefinitely pending Appellant's treatment, Dr. Bennett Cecil, the prescribing physician, testified under oath to the potential side effects a patient might suffer. Although debilitating fatigue, memory lapses, and impaired concentration were among them, Cecil testified that he was unaware of Appellant's having experienced any of those side effects. In response to questioning by the trial court, Cecil also testified that the court could take certain measures to accommodate Appellant if the side effects became manifest, *e.g.,* recessing court more frequently and even adjourning court early for the day. In overruling Appellant's motion, the trial court noted that, contrary to any impairment in Ap-

pellant's mental acuity, it believed Appellant's numerous *pro se* motions, some filed without aid of jailhouse counsel, reflected positively on his capacity to stand trial.

Additionally, Appellant's trial had already experienced repeated delays: more than two years elapsed between his October 2001 arraignment and his February 2004 trial date, when his motion to continue was denied. During that time he successfully sought postponement of his trial for a competency evaluation, a continuance for further investigation and to subpoena more witnesses, and a postponement pending the assignment of replacement legal counsel after Appellant expressed dissatisfaction with his previously-appointed counsel. Appellant's subsequent motion to continue for an indefinite period, possibly more than a year pending his medical treatment, would have added to the already substantial delay in trial. In addition to the increased burden on the trial court, a continuance would have been even more stressful to both victims in the case, who would likely be called to recount before the jury the details surrounding the indignities they suffered.

The trial court's decision to deny Appellant's motion for an additional continuance was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles," *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999), thus no abuse of discretion occurred.

## IV. GUILTY PLEA.

 Appellant appeals from the trial court's denial of his motion to withdraw his guilty plea on the grounds that his plea

was involuntary and the trial court's ruling was, therefore, an abuse of discretion. A trial court may accept a criminal defendant's conditional guilty plea to any criminal charge, but must first ascertain that the plea is made voluntarily and with an understanding of the nature of the charge. RCr 8.08–.09. Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted.[3] *Boykin v. Alabama*, 395 U.S. 238, 241–42, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

In the case *sub judice*, the trial court conducted a facially satisfactory *Boykin* colloquy: after Appellant announced his intent to accept the Commonwealth's plea deal, the trial court addressed each constitutional right Appellant was waiving by entering a conditional guilty plea, *i.e.*, the right to a trial by jury, to confront adverse witnesses, to an attorney (though Appellant was represented by counsel throughout), and to remain silent and not to have the jury use his silence against him. The trial judge further explained the consequences of Appellant's *Alford* plea, *i.e.*, that he would have each felony on his permanent record, that he would retain the right to appeal adverse rulings, and that he would have to register as a sex offender upon his release. Furthermore, in response to questioning by the trial court, Appellant affirmed the following under oath: that he had legal counsel who reviewed the written offer of plea agreement with him and explained his rights and the consequences of the plea; that he had a general education degree and could read and write; that he was satisfied with the advice of his legal counsel; that he was

3. The purpose of this showing is "to make sure he has a full understanding of what the plea connotes and of its consequence," including the constitutional rights that are waived by a guilty plea. *Id.* at 243–44, 89

S.Ct. at 1712, Failure to conduct a *Boykin* hearing on the record constitutes reversible error, and an aggrieved defendant may withdraw his plea and enter a new pleading without prejudice. *Id.* at 244, 89 S.Ct. at 1713.

not under the influence of any drugs or alcohol at the time, except the prescribed medications discussed earlier in the day, *see infra*; and that he "definitely" felt like he knew what he was doing in entering the plea. The trial court then reviewed a brief summary of the evidence the Commonwealth intended to present if the case went to trial and explained each count for which Appellant would be tried.

After the trial court accepted Appellant's plea, but prior to the sentencing and final judgment,[4] Appellant moved the court to withdraw his guilty plea pursuant to RCr 8.10. Criminal Rule (RCr) 8.10 provides that, "[a]t any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted." Though an RCr 8.10 motion is generally within the sound discretion of the trial court, a defendant is entitled to a hearing on such a motion whenever it is alleged that the plea was entered involuntarily. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky.2002); *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky.2001); *see also Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). If a guilty plea is found to have been entered involuntarily, considering the totality of the circumstances, a trial court must grant a defendant's motion to withdraw the plea. *Rodriguez*, 87 S.W.3d at 10; *Haight v. Commonwealth*, 760 S.W.2d 84, 88 (Ky. 1988); *Wood v. Commonwealth*, 469 S.W.2d 765, 766 (Ky.1971). This inquiry is inherently fact-sensitive, thus this Court reviews such a determination for clear error, *i.e.*, whether the determination was supported by substantial evidence. *Rodriguez*, 87 S.W.3d at 10–11; *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky.App. 2004).

In the case *sub judice*, the trial court, having already conducted the *Boykin* hearing when the plea was entered, denied the motion and simply referred to its previous *Boykin* colloquy in finding that Appellant's plea had been voluntarily entered. Appellant now appeals that decision, alleging that his plea was rendered involuntary or unknowing because: (1) he had been misinformed by defense counsel regarding when he would be released from prison; (2) he had been under the influence of medications that interfered with his ability to fully comprehend and participate in the proceedings; and (3) he had been misinformed by his attorney regarding the probable composition of the jury, which led him to conclude that he would be unable to get a fair trial and thus should accept the plea offer.

A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court. *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472. A guilty plea is intelligent if a defendant is advised by competent counsel regarding the consequences of entering a guilty plea, including the constitutional rights that are waived thereby, is informed of the nature of the charge against him, and is competent at the time the plea is entered. *Id.* at 756, 90 S.Ct. at 1473; *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712.

### A. Length of Sentence.

Appellant argues that he was misinformed by defense counsel regarding when he would be released from the penitentiary and that this misinformation rendered his conditional guilty plea involuntary. Despite the trial court's explanation

---

4. Due to treatment Appellant was receiving for hepatitis-C, there was an abnormally long interim between the entrance of Appellant's plea and his sentencing.

to Appellant during the colloquy that, *inter alia,* he would be sentenced to twenty years, be required to serve 85% of that sentence prior to eligibility for parole, and be credited with time served prior to sentencing, Appellant now asserts that a statement in a letter from his attorney sent prior to the colloquy (and absent from the record) assured him that he would be *released,* rather than merely eligible for parole, at the expiration of 85% of his sentence, and that he relied on this assurance in pleading guilty. Thus, he argues, the trial court was required to accept his motion to withdraw.

 A defendant's eligibility for parole is not a "direct consequence" of a guilty plea the ignorance of which would render the plea involuntary.[5] *Armstrong v. Egeler,* 563 F.2d 796, 799–800 (6th Cir.1977); *see also Ex parte Evans,* 690 S.W.2d 274, 279 (Tex.Crim.App.1985) ("We think, then, that the speculative nature of parole *attainment* is such as to discount its legal importance on the subject of voluntariness of a guilty plea.").

Neither in the quoted language nor elsewhere in *Boykin* does it appear that a precise knowledge of all of the penal ramifications rises to the quality of a constitutional requirement....

. . . .

The requirement that a plea be intelligently and voluntarily made does not impose upon the trial judge a duty to discover and dispel any unexpressed misapprehensions that may be harbored by a defendant. This is especially true as to mistaken assumptions for which there is no reasonable basis.

... The district court was not bound to accept [defendant's] testimony years

later in the face of the colloquy which took place at the time of the plea.

*Armstrong,* 563 F.2d at 799–800 (footnote omitted). As did the defendant in *Armstrong,* Appellant asserts that the trial court should give more weight to his subsequent testimony regarding his mistaken belief than to statements he made to the contrary during the plea colloquy. We disagree.

The following exchange occurred between Appellant and the trial judge regarding the terms of his sentence under the plea agreement.

Counsel: We would like the judge to entertain a colloquy for an *Alford* guilty plea.

Judge: *The one you settled on was the 20–years straight: 85% [parole eligibility] on twenty years?*

Counsel: 85%, less credit for time served. He's been in for two-and-a-half years.

. . . .

Judge: [to Appellant] And you understand the commonwealth is recommending 18 years on each of those felonies that you faced ten- to twenty-[years] on. They're recommending 18 years on the rape, 18 on the sodomy, the burglary, the kidnapping, and the robbery? *And each one of those 18 year sentences would be enhanced to twenty years* because of you being a persistent felon.

App'ant: Right.

Judge: They're also recommending 5 years on the unlawful imprisonment, 5 years on each count of wanton endangerment, and 5 years on the failure to notify the change of address. And every single one of these would run

---

5. The full range of penalties for the charge to which a defendant pleads guilty is a "direct consequence" of the plea of which a defendant must be aware. *Armstrong,* 563 F.2d at 800.

concurrently, *so you're looking at a total of twenty years on everything.*

App'ant: Yes sir, I understand.

Judge: All right. . . . Is there anything about this plea agreement that you do not understand?

App'ant: No sir, there's not.

Judge: Do you have any questions that you want to ask the court or ask your attorneys before the court accepts your pleas?

App'ant: No sir.

Judge: And Mr. Edmonds, the court will make a finding that your pleas are knowingly and voluntarily entered, and that there's a factual basis for it.

. . . .

Counsel: We'd ask that probation and parole compute credit-time served, which we believe to be in excess of two-and-a-half years, and obviously several months from now at sentencing the appropriate time to be appropriated or given credit at that time.

. . . .

Judge: He'll automatically get credit for time served.

(Emphasis added.) In addition to the above colloquy in which Appellant's own attorney and the judge described his parole eligibility, the Motion to Enter a Plea of Guilty, signed by Appellant, and the Commonwealth's Offer on a Plea of Guilty both clearly set forth the sentences that would accompany Appellant's guilty plea.

 Although a defendant should be able to rely on representations by his attorney, reliance on a statement that is flatly contradicted by subsequent statements made by that same attorney, the trial court, and the Commonwealth during the plea negotiations and the *Boykin* colloquy is not reasonable and does not render the plea involuntary. "[I]f the information given by the court at the [plea] hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir.1992); *see also United States v. D'Angelo,* 172 F.3d 1046, 1047–48 (8th Cir.1999) (holding that defendant's reliance on incorrect legal advice did not automatically warrant withdrawal of guilty plea); *United States v. Mahler,* 984 F.2d 899, 902 (8th Cir.1993) (holding defendant not entitled to withdraw guilty plea because he was under a misapprehension regarding sentence range); *United States v. Todaro,* 982 F.2d 1025, 1030 (6th Cir.1993) (holding misunderstanding regarding whether defendant would be probated did not require withdrawal of guilty plea). "Like the Supreme Court in *Fontaine v. United States[,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973) ], we recognize that a defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge." *Todaro,* 982 F.2d at 1030 (citations and quotations omitted).

There is substantial evidence to support the trial court's determination that the plea was voluntary and intelligent. The extensive exchange on the record, recounted above, between the trial court and Appellant prior to his plea constitutes substantial evidence that Appellant was aware of the sentencing implications and was making a voluntary and intelligent plea. *Rigdon,* 144 S.W.3d at 288. Therefore, we find no error.

### B. Ingestion of Medications.

 Appellant next asserts that his guilty plea was involuntary because he was

under the influence of two medications prescribed for treatment of his hepatitis-C, Infergen and Ribavirin, which caused severe fatigue and lapses of concentration. According to Appellant, faced with the "Hobson's choice" of going to trial while experiencing these negative side effects or pleading guilty, he was forced to plead guilty and was thereby deprived of his right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution.

■ During the plea colloquy, the following exchange took place:

> Judge: [to Appellant] Sir, this afternoon, are you under the influence of any drugs, alcohol, medications, anything that would cloud the way you're thinking?
>
> App'ant: No.
>
> Judge: *And I know you're on medications, but it's not stuff that would effect you mentally?*
>
> App'ant: *No.*

(Emphasis added.) Appellant now argues that, despite these sworn statements, the side effects from his medications were so pervasive that he was unable to enter a voluntary guilty plea. However, the record contains substantial evidence to support the trial court's ruling on the plea's voluntariness. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *see also Bandy v. State,* 847 S.W.2d 93, 96 (Mo.Ct.App. 1992) (holding guilty plea not rendered

involuntary by ingestion of medications where defendant acknowledged drugs did not impair faculties prior to plea). Appellant's sworn statements during the plea colloquy, coupled with the sworn testimony by Dr. Cecil during Appellant's pretrial motion for continuance, *see supra,* amounted to substantial evidence that Appellant enjoyed the capacity to comprehend the proceedings. Additionally, Appellant was alert and responsive during the proceedings prior to and throughout the guilty plea.[6] As such, the trial court's finding that the medications did not render the plea involuntary or unintelligent was not clearly erroneous. *Rigdon,* 144 S.W.3d at 288.

### C. Composition of the Prospective Venire Panel.

■ Appellant's final challenge to the denial of his RCr 8.10 motion is that his plea was involuntary and unintelligent because his attorney told him in a letter that he would be tried by an all white, female jury, and that such a jury would inevitably convict him. Faced with such an alternative, Appellant argues, he was forced to enter the guilty plea. The letter was never included in the record. However, in support of his motion, Appellant produced the letter in court and read from it. Thereafter, his attorney stated the following:

> Counsel: And at great peril, I do tell clients, ... I try a lot of cases and it has been my experience based on ... the demographics of the racial population of this jurisdiction, pretty much is similar with the veniremen we receive. I did tell my client he would be ... fortunate to get six to eight people of color and the balance being Cauca-

---

6. Although Appellant emphasizes that he had his head down on the table during portions of the proceedings as evidence of his fatigue, during one such instance Appellant was specifically asked whether he felt alright, and he responded affirmatively.

sian, out of forty-two.... It has also been my experience that the vast majority of my cases with black defendants have been with an all white jury. I have had occasions when one or two or three blacks [are on the panel] .... But many times blacks are stricken, even after *Batson* challenges, and I told my client he would be tried by a predominantly white jury.

Judge: Would be predominantly ....

Counsel: Which is true. Well, it's my experience. May not always be true.... I projected that white female jurors will be uncomfortable talking about rape and anal intercourse. I don't know that men will be more than women, but my sense was that women would be. And those are the remarks I made, and if they are false or misleading, I take full responsibility for it.

Though discrimination in jury selection on the basis of race is prohibited by the equal protection clause, "a defendant has no right to a petit jury composed in whole or in part of persons of his own race." *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). As such, statements by a defense attorney, based on his own prior experience, that a criminal defendant faces the prospect of being tried by a jury devoid of members of that defendant's race are not misleading or inaccurate. Reasonable forecasts by defense counsel regarding a defendant's fate or likelihood of success at trial do not render a plea involuntary simply because the prediction is unwelcome or undesirable. *See, e.g., United States v. Cothran*, 302 F.3d 279, 284 (5th Cir.2002) ("[A] defense lawyer's stern warnings about the client's chances of success at trial ... do[es] not compromise voluntariness."); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101–02 (5th Cir.

1987) (finding plea voluntary where attorney warned client that he would be lucky to get ninety-nine years if he went to trial and threatened to withdraw if defendant did not plead guilty). Concern over the prospect of being tried by a jury with a racial composition permitted by the Constitution cannot render a subsequent guilty plea constitutionally invalid for want of voluntariness.

■ After finding that Appellant's plea was voluntary (which is reviewed for clear error), a trial court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky.2002); *Elkins v. Commonwealth*, 154 S.W.3d 298, 300 (Ky.App.2004). For the reasons set forth above, the denial of Appellant's motion to withdraw his guilty plea was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles," *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999), thus no abuse of discretion occurred.

Accordingly, the judgment and sentence imposed by the Jefferson Circuit Court pursuant to Appellant's guilty plea is AFFIRMED.

All concur.