# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 28, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000090 MR

ERIC R. RIVERA — APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT
V.       HONORABLE GREGORY M. BARTLETT, JUDGE
NO. 13-CR-01020

COMMONWEALTH OF KENTUCKY — APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

### I. BACKGROUND

A Kenton County Grand Jury indicted Appellant, Eric Roark Rivera, on seven charges: one count of incest, three counts of first-degree sodomy (victim under twelve years of age), two counts of first-degree sexual abuse (victim under twelve years of age), and one count of distribution of obscene matter to a minor. These charges arose from allegations that Rivera had engaged in multiple sex acts with two of his daughters, eight-year-old Jane and six-year-old Suzie.[1] Rivera ultimately accepted a plea agreement, pleading guilty to incest, sodomy, and sexual abuse. After entering his plea (but before the

---

[1] We have changed the names of all minors in this Opinion to protect their privacy.

sentencing hearing) Rivera attempted to withdraw it based on the alleged deficient performance of his counsel. The trial court denied this motion and sentenced Rivera to twenty-five years' imprisonment in accordance with the plea agreement.

Rivera now appeals as a matter of right, Ky. Const. §110(2)(b), arguing that his plea was not voluntarily, knowingly, and intelligently made and that the trial court abused its discretion in denying his motion to withdraw the plea. Further facts will be developed below, as needed for our analysis.

## II. ANALYSIS

Rivera asserts that the deficient performance of his counsel in investigating and relaying information caused time pressures and factual misunderstandings which rendered his plea involuntary. Therefore, Rivera argues that the trial court should have granted his motion to withdraw the plea.

Ameer Mabjish represented Rivera during the period leading up to his plea. John Delany later acted as co-counsel and trial attorney for Rivera. The Commonwealth initially offered Rivera a plea deal with a thirty-year sentence. More than a year later, the Commonwealth had not revoked the offer, nor had Rivera accepted it. At that point, the Commonwealth purports it made a verbal offer of a twenty-five-year sentence to Mabjish. Rivera testified that Mabjish waited several days to inform him of the twenty-five-year offer. By the time Rivera knew about the new offer, it was only six days before his trial was slated to begin—and only one day before the offer would expire.

2

Rivera ultimately accepted the plea. The trial court held a hearing in order to leave a record of whether Rivera had "a full understanding of what the plea connote[d] and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). Both Rivera's attorneys, Mabjish and Delaney, were present at the *Boykin* hearing. The trial judge conducted a thorough colloquy, making detailed and repetitious inquiries into Rivera's decision to plead guilty and probing Rivera's understanding of the consequences of the plea.

During the colloquy, Rivera stated under oath that his plea was free and voluntary. He affirmed that he understood the plea agreement and its consequences. Though he hesitated in giving his answer (as discussed in greater detail below), Rivera stated that his attorneys had met with him for an adequate amount of time to discuss and explain the plea and its ramifications. Rivera confirmed his understanding of the sex offender registry and the requirements of registering as a sex offender. He also stated that he understood that, as a convicted felon, his rights would be restricted. He stated he was not under the influence of any drugs or medications which might hamper his ability to make the decision to accept the plea.

Rivera did have two complaints during the colloquy. First, when the court asked if he was satisfied with the performance of his attorneys, Rivera hesitated slightly before answering in the affirmative. When the trial judge asked Rivera to explain the hesitation, Rivera stated that he was upset that he had only met with his attorney once, and that he felt rushed having only had twenty-four hours to consider the plea. Rivera was referring to having only a

3

single meeting with his trial attorney, Delany. However, Rivera confirmed that he had met with Mabjish over the course of the case and had spoken to him on the telephone. Rivera affirmed his belief that Mabjish had given him sound and adequate advice as to his chances at trial, and that he believed Mabjish had investigated his case sufficiently. Rivera said, "It's not so much that he didn't come see me, it's just this last-minute offer."

At this point, the trial judge asked the Commonwealth if the deadline on the plea deal could be extended to give Rivera more time for consideration. The Commonwealth declined, as witnesses (including the minor victims) would be flying in from out of state if Rivera rejected the plea deal and, instead went to trial. The Commonwealth reasoned that prosecutors need time to prepare these witnesses for trial.

After the Commonwealth declined to extend the deadline, the trial judge then asked Rivera how he wished to proceed. Rivera answered, "I already agreed to it, let's move forward." The judge asked Rivera if there was anything his counsel had left unattended or if there was anything else Rivera needed from the court before entering his plea. Rivera responded that he was entering the plea of his own volition. Rivera indicated he took his attorneys' word that all relevant matters had been attended to, and that his attorneys had discussed everything relevant to his decision to plead with him. Rivera explained to the trial court that he believed the plea agreement was the best way to resolve this case, that he did not wish to face a jury trial, and that the

4

potential for a much harsher sentence was the motivating factor in his decision to accept the plea.

Rivera did not enter an *Alford* plea, though under *North Carolina v. Alford*, "An accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when [the defendant] intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt." 400 U.S. 25, 25–26 (U.S. 1970). Rather, Rivera admitted the factual allegations underlying each of the offenses to which he pleaded guilty.

## A. The Trial Court Did Not Commit Clear Error in Finding Rivera Entered the Plea Voluntarily.

Two weeks after accepting the plea (but before sentencing), Rivera sent a letter to the trial court, seeking to revoke his guilty plea. In the letter, Rivera stated that he was not guilty of the charges to which he had previously pleaded, and claimed that his attorneys' deficient performance coerced him into accepting the plea agreement involuntarily. Rivera claimed that his counsel had "materially misrepresented key facts and testimony that was purported to be used for and against [Rivera] in [his] defense." He also claimed that his access to discovery materials had been incomplete at the time of the plea.

The trial court held a hearing to consider Rivera's motion to withdraw his guilty plea, and appointed conflict counsel to represent Rivera at the hearing. Rivera asserted three main arguments as to why his plea should be set aside.

5

First, Rivera objected to the twenty-four-hour timeframe he had to consider the final plea agreement. Second, Rivera claimed his attorneys misrepresented two key pieces of information to him. Third, Rivera complained that Mabjish had only had two meetings with him over the course of the year he represented Rivera.

After the evidentiary hearing, the trial court issued a written order denying Rivera's request to withdraw his guilty plea. The trial court found that Rivera "freely, knowingly, intelligently, and voluntarily entered a plea of guilty."

The Kentucky Rules of Criminal Procedure require a trial court accepting a plea to determine "that the plea is made voluntarily with understanding of the nature of the charge." RCr 8.08. Furthermore, due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted. *Boykin*, 395 U.S. at 241-42. "In cases where the defendant disputes his or her voluntariness, a proper exercise of this discretion requires trial courts to consider the totality of the circumstances surrounding the guilty plea." *Bronk v. Commonwealth*, 58 S.W.3d 482, 486–87 (Ky. 2001).

Though ruling on an RCr 8.10 motion to withdraw a plea is within the sound discretion of the trial court, a defendant is entitled to a hearing on such a motion whenever it is alleged that the plea was entered involuntarily. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002); *Bronk*, 58 S.W.3d at 486; see also *Brady v. United States*, 397 U.S. 742, 749 (1970).

6

In order to succeed on a motion to withdraw a plea under RCr 8.10, "the movant must allege with particularity specific facts which, if true, would render the plea involuntary." *Commonwealth v. Pridham*, 394 S.W.3d 867, 874 (Ky. 2012). As the Supreme Court of the United States has held:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)

*Brady* 397 U.S. at 755.

Therefore, in determining whether the trial court erred in denying Rivera's motion to revoke his plea, we must first determine whether Rivera's plea was voluntary. "If a guilty plea is found to have been entered involuntarily, considering the totality of the circumstances, a trial court must grant a defendant's motion to withdraw the plea. This inquiry is inherently fact-sensitive, thus this Court reviews such a determination for clear error, *i.e.*, whether the determination was supported by substantial evidence." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006) (internal citations omitted).

The question of voluntariness related to the alleged deficiency in counsel required the trial court to determine if Rivera had made a proper showing that counsel's assistance was ineffective in enabling Rivera to intelligently weigh his legal alternatives in deciding to plead guilty. There are two components to this analysis:

7

"(1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial."

*Bronk*, 58 S.W.3d at 486-87 (quoting *Sparks v. Commonwealth.*, 721 S.W.2d 726, 727 (Ky. Ct. App. 1986)).

In other words, the trial court's inquiry into allegations of ineffective counsel requires the court to determine whether counsel's performance was below professional standards and "caused the defendant to lose what he otherwise would probably have won" and "whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Foley v. Commonwealth*, 17 S.W.3d 878, 884 (Ky. 2000).

At the hearing on Rivera's motion to withdraw his plea, Rivera's arguments of involuntariness all boiled down to his dissatisfaction with his counsel in investigating and relaying information to him adequately and in a timely manner. However, the trial court found Rivera's arguments unpersuasive. The court found that none of Rivera's assertions, even if taken as true, acted to negate the voluntariness of his initial plea.

When the trial court examined Rivera's first assertion (that his counsel was ineffective because he failed to relay the plea offer to him in a timely manner—leaving him with only twenty-four hours to decide), the trial court reviewed the events going back to Rivera's indictment. Rivera conceded that the Commonwealth had offered him a thirty-year deal more than a year before,

8

and that he had discussed that offer with Mabjish at that time. Given this prior offer, the Commonwealth stated it thought twenty-four hours was enough time for Rivera to consider a better offer of twenty-five years.

Here, Rivera was faced with a choice on the eve of trial. On one hand, he could accept a slightly better offer (twenty-five years) than the thirty-year offer he had been considering for more than a year. Under that offer, the Commonwealth would dismiss two counts of first-degree sodomy, one count of first-degree sexual abuse, and one count of distribution of obscene matter to a minor. In the alternative, Rivera could go to trial on all counts and charges and, if convicted, face sentences of twenty-years' to life imprisonment on each Class A felony. No doubt a choice between two harsh alternatives is not a pleasant choice. However, dissatisfaction with alternatives available to a defendant does not render the decision involuntary. Rivera's frustration with being presented with such a decision was apparent at the *Boykin* hearing, however, the choice was still Rivera's to make.

Before making his decision, Rivera conferred with his counsel for several hours. He eventually chose to accept the plea agreement rather than face a jury trial and a potentially harsher sentence. In fact, at his *Boykin* hearing, Rivera specifically stated that he did not want to face a jury trial because of the likelihood of a lengthier prison sentence. Rivera made a choice between reasonable alternatives when he chose to accept the plea agreement.

While it would have been preferable for Rivera's attorney to have told him about the plea offer earlier, we do not believe this deficiency rendered his plea

9

involuntary. We hold that counsel was not "so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Foley*, 17 S.W.3d at 884.

Rivera's second assertion concerned two pieces of information he felt his counsel had failed to share with him. First, Rivera claimed to have discovered, post-plea, that his sister would have given testimony at trial that differed from what he was originally told. Second, he asserted there were discrepancies between the summary of Suzie's interview with investigators and the video of her interview.

First, Rivera argues that when he entered his plea, he believed his sister's testimony would be different than what he later discovered it would have been. As a frame of reference, we note that the alleged abuse was brought to light when Jane's grandmother asked the eight-year-old to write a letter to Jesus about any problems she was having and place it in the Bible. In her second letter, Jane alleged that her father had sexually abused her. Apparently, when Rivera accepted the plea deal, he believed his sister, Kelly Mounce, would testify that Jane's grandmother told Mounce that Jane independently wrote the letter describing sexual abuse. Rivera claimed that he later learned through a conversation with Mounce that she would have *actually* testified that Jane's grandmother told Mounce that she had assisted Jane in drafting the letter. Rivera argued to the trial court that his counsel was deficient in not discovering and informing him of Mounce's actual intended testimony.

10

During the hearing, Rivera's conflict counsel attempted to play an audio recording of himself speaking with Mounce on the telephone. The prosecutor objected to the tape as unauthenticated hearsay, and wondered why Mounce, a local resident, had not appeared at the hearing in person. The judge sustained the prosecutor's objections, and the tape was not played into the record. However, the court did allow Rivera to enter the tape by avowal.

Rivera does not argue specifically that this evidentiary ruling was in error, but rather, that the trial court erred in its ultimate finding that Rivera's plea was voluntary. However, Rivera's claim concerning the voluntariness of his plea hinges in part on whether Rivera can prove his trial counsel failed to properly investigate Jane's note. This phone conversation is the evidence he offered to support that claim. Therefore, we find it necessary to first determine whether the trial court properly excluded the statement as hearsay.

The statements at issue were not "made by the declarant while testifying at the trial or hearing," and they were "offered in evidence to prove the truth of the matter asserted." Therefore, the trial court was correct that the statements were hearsay. Of course, "[h]earsay is not admissible except as provided by [the Kentucky Rules of Evidence] or by rules of the Supreme Court of Kentucky." KRE 802. Here, Rivera's sister was available to testify (or at least he makes no claim that she was not available for purposes of the hearsay rules). Therefore, there is no need for this Court to examine the KRE 804 exceptions to the hearsay rule applicable to unavailable witnesses. Furthermore, none of the KRE 803 exceptions apply in this case. We hold that

11

the trial court did not abuse its discretion by ruling the phone call inadmissible.

However, even if we were to hold that the trial court abused its discretion in disallowing the hearsay testimony, the ultimate result would be the same. This Court has reviewed the recording, on which Mounce is speaking to Rivera's conflict counsel. Therein, Mounce describes a phone conversation sometime in the fall of 2013 during which she learned for the first time that Jane's grandmother had prompted Jane to write the letter and place it in the Bible.

In the recording, Mounce told Rivera's conflict counsel that prior to the 2013 phone conversation, she believed the letter had "just been found by a teacher or something." However, during the 2013 call (which she described as being a speaker-phone conversation) Mounce said she heard Jane's grandmother say that it was her idea for Jane to write the letter to Jesus. Mounce clarified that this is what she meant when she indicated that Jane's grandmother "helped" her with the letter containing allegations of sexual abuse. Mounce went on to state that her memory of the conversation was quite vague, but she did affirm that she had the impression that Jane's grandmother was present when Jane drafted the letter. Mounce offered very few specific facts in support of her general impressions.

The second piece of information Rivera asserts he did not possess when he entered his plea regards a statement given by Rivera's younger daughter Suzie. Though Rivera was provided with a summary of Suzie's statement, he

12

claims that he was unaware that a video of her statement existed until after entering his plea. Though the summary and the video are substantially similar, the summary did not contain a particular statement by Suzie that is on the video. Specifically, when asked where Rivera's clothes were while the alleged abuse was taking place, Suzie replied "upstairs." Rivera asserts that the apartment at issue has no upstairs, and therefore, this inconsistency could be used for impeachment purposes against the alleged victim. Rivera asserted that he did not have access to these discovery materials when he pleaded guilty.

The factual discrepancies that Rivera asserts in his case are speculative and collateral to the overall outcome of a potential trial. Rivera has not made a showing before any court of how these discrepancies would materially alter or negate the charges against him. Given the nature of these discrepancies it cannot be said that Rivera's counsel was so deficient that it "caused the defendant to lose what he otherwise would probably have won." *Foley*, 17 S.W.3d at 884.

Finally, Rivera claims his counsel was ineffective due to the limited nature of their meetings. This issue was also addressed in the hearing. Rivera asserted a general dissatisfaction with Mabjish, who he claimed only visited him twice and had one telephone conversation with him. The prosecutor pointed out that Mabjish was on record at the *Boykin* hearing as saying that he had conducted all reasonable preparations for trial. Rivera had affirmed the voluntary and intelligent nature of his plea in the *Boykin* hearing. He

13

expressed his satisfaction with his counsel, and affirmed that the terms of the plea, and the ramifications of acceptance, had been discussed with him at length. Rivera affirmed that he understood the charges against him, and the legal alternatives available to him at the time. Taking all of this into account, the trial court found that Rivera's plea was voluntary.

Again, we examine a trial court's findings of fact for clear error. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence. *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008). We acknowledge that "the validity of a guilty plea is determined not by reference to some magic incantation recited at the time it is taken but from the totality of the circumstances surrounding it." *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978). For this reason, we turn to the legal situation in which Rivera found himself when he chose to enter his plea.

Rivera was facing a jury trial the next week in which he was accused of sexually abusing his two young daughters. The Commonwealth's witnesses included Rivera's ex-wife and two minor daughters. His daughters were expected to testify in open court about numerous instances of incest, sodomy, and sexual abuse perpetrated upon them by their father. Rivera was in a good position to know what testimony these witnesses were likely to give, and to speculate as to the likely effect this testimony would have on a jury verdict. As the Supreme Court of the United States has opined:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present

14

imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case.

*Brady*, 397 U.S. at 756-57

Given the weight of the evidence, and the trial court's superior position from which to weigh that evidence, we hold the trial court did not commit clear error when it ruled that the Appellant entered his plea "freely, knowingly, intelligently, and voluntarily."

## B. The Trial Court did not abuse its discretion in denying Rivera's motion to withdraw his guilty plea.

"After finding that Appellant's plea was voluntary, a trial court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion." *Edmonds*, 189 S.W.3d at 570 (citing *Rodriguez*, 87 S.W3d at 10). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In this case, the trial court held an evidentiary hearing during which Rivera had an opportunity to relay all relevant information to the court regarding his motion to withdraw his plea. After careful consideration of the totality of the circumstances surrounding the guilty plea, the court was satisfied that the "Defendant freely, knowingly, intelligently, and voluntarily entered a plea of guilty." There are no valid grounds to assert that the trial

15

court's "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945. Therefore, the trial court did not abuse its discretion in denying Rivera's motion to withdraw his plea. The court was operating within its sound legal discretion when it made the determination that Rivera's guilty plea was in fact voluntary, and, as such, binding on Rivera.

## III. CONCLUSION

For the foregoing reasons, we affirm Rivera's convictions and corresponding sentences.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate
Appellate Division

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General Of Kentucky

Thomas Allen Van De Rostyne
Assisstant Attorney General

16