# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 18, 2019
NOT TO BE PUBLISHED

*Supreme Court of Kentucky*

FINAL

2018-SC-000171-MR DATE 5/9/19 Kim Redmon, DC

ODILON PAZ-SALVADOR      APPELLANT

V.

ON APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE PAUL F. ISAACS, JUDGE
NO. 15-CR-000143

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

On November 17, 2017, Odilon Paz-Salvador's motion to withdraw his guilty plea was denied and, in accordance with his plea agreement, he was sentenced to thirty-five years' imprisonment for wanton murder, two counts of wanton endangerment, leaving the scene of an accident, and first-degree fleeing or evading police. Paz-Salvador appeals as a matter of right[1] and argues that he should have been allowed to withdraw his guilty plea because (1) the trial court failed to hold a substantive evidentiary hearing on his claim that the plea was involuntary, and (2) the trial court did not consider the totality of the

---

[1] Ky. Const. § 110(2)(b).

circumstances in ruling on his motion. Finding no reversible error, we affirm Paz-Salvador's conviction.

## I. Factual and Procedural Background.

On May 23, 2015, Paz-Salvador, a Mexican citizen, drove his truck into an oncoming lane of traffic near Georgetown, Kentucky. Paz-Salvador nearly hit two cyclists who were completing an organized one-hundred-mile group bike ride before hitting a third cyclist, Mark Hinkle, who landed on the bed of Paz-Salvador's truck. Instead of stopping, Paz-Salvador continued to drive with Hinkle in the back of his truck. A deputy sheriff eventually found Paz-Salvador's truck in a trailer park, with Hinkle still on the truck bed. Hinkle was transported by EMS to UK hospital where he was pronounced dead. Paz-Salvador was arrested and admitted to drinking six beers before he began driving that day. Another open beer was found sitting in the cupholder near the center console of his truck.

Paz-Salvador was taken to the hospital for a blood draw, but asked to speak to "Amy," who the arresting officer understood to be a Spanish-speaking attorney in Georgetown. After consulting with counsel, he declined to have his blood drawn. Officers then read him his Miranda rights and began to have a conservation with him in English. He was subsequently charged with DUI-3rd offense within five-year period, first-degree fleeing or evading police, wanton endangerment, leaving the scene of an accident, and murder. He was indicted on July 16, 2015, for wanton murder, two counts of first-degree wanton

2

endangerment, leaving the scene of an accident, first-degree fleeing or evading, and driving without a license.

In late 2016, Paz-Salvador reported that his mental health expert had determined he was incompetent to stand trial. The trial court sent Paz-Salvador to the Kentucky Correctional Psychiatric Center ("KCPC") for treatment and evaluation. At KCPC, Paz-Salvador was often observed playing chess and communicating in both English and Spanish. A lengthy two-day competency hearing was held in April 2017, at which both the Commonwealth's and Paz-Salvador's experts testified. The Commonwealth's expert testified that Paz-Salvador was competent and that his competency was not a close call. Paz-Salvador's expert did not directly testify to his competency, and although her report in the trial court record does show that Paz-Salvador had a sub-70 IQ on one test, she concluded her report by stating that he had Borderline Intellectual Functioning—"typically diagnosed when an individual's overall intelligence score falls within a 71–84 range"—and that she lacked the evidence to declare he had an intellectual disability. Based on both experts' testimony, the trial court found Paz-Salvador competent to stand trial and therefore, competent to participate in plea negotiations.

Trial was finally set for July 17, 2017, over two years after the incident, and initially the Commonwealth did not offer any potential plea. However, defense counsel reached out to the family of the victim about a possible plea, and the Commonwealth eventually offered a plea deal of thirty-five years' imprisonment on July 14, 2017, the Friday before trial. Paz-Salvador pled

3

guilty on the morning of trial and the trial court conducted a thorough *Boykin*[2] colloquy. At formal sentencing in October, Paz-Salvador made a motion to withdraw his guilty plea because he did not think the plea deal was fair because his act "was not intentional." The trial court immediately appointed conflict counsel in accordance with *Commonwealth v. Tigue*, 459 S.W.3d 372 (Ky. 2015).

Conflict counsel filed a written motion to withdraw the plea based on Paz-Salvador's intellectual defects which rendered involuntary his decision to enter into a plea agreement for murder three days before trial. The trial court denied the motion after hearing conflict counsel's and the Commonwealth's arguments. The trial court ruled that the plea was voluntary, that the plea was fair given the potential for life imprisonment, and that he did not find Paz-Salvador's arguments "convincing." This appeal followed.

## II. Standard of Review.

The issue before this Court centers on whether Paz-Salvador entered into his plea agreement voluntarily. Due to the inherently fact-sensitive nature of this inquiry, "this Court reviews such a determination for clear error, *i.e.*, whether the determination was supported by substantial evidence." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006) (citations omitted). If this Court finds that Paz-Salvador's plea was voluntary, "a trial court's denial of a

---

[2] A *Boykin* colloquy is "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969).

4

defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion." *Id.* at 570 (citation omitted).

### III.   Analysis.

At his formal sentencing, Paz-Salvador made a motion to withdraw his guilty plea because he did not think the plea was "fair" due to his acts being unintentional. RCr[3] 8.10 provides that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." Once a motion to withdraw is made, "the discretion to deny [the motion] exists only after a determination has been made that the plea was *voluntary*. If the plea was *involuntary*, the motion to withdraw it must be granted." *Rodriguez v. Commonwealth,* 87 S.W.3d 8, 10 (Ky. 2002) (citations omitted). "Though an RCr 8.10 motion is generally within the sound discretion of the trial court, a defendant is entitled to a hearing on such a motion whenever it is alleged that the plea was entered involuntarily." *Edmonds,* 189 S.W.3d at 566.

A. The Plea Withdrawal Hearing.

Paz-Salvador argues that the trial court did not hold a "substantive" evidentiary hearing, and instead the plea withdrawal hearing was more of an "oral argument" than a hearing. Paz-Salvador relies on *Tigue,* 459 S.W.3d 372, and *Rigdon v. Commonwealth,* 144 S.W.3d 283 (Ky. App. 2004), in arguing that the hearing held by the trial court was not a proper RCr 8.10 motion hearing.

---

[3] Kentucky Rules of Criminal Procedure.

However, *Tigue* and *Rigdon* are notably distinguishable from the present case. First, both *Tigue* and *Rigdon* involved issues with trial counsel. In *Rigdon*, the trial court failed to hold an evidentiary hearing on Rigdon's claims of ineffective assistance of counsel. 144 S.W.3d at 286. In *Tigue*, this Court held that the defendant's right to counsel was violated when he made a *pro se* motion to withdraw his plea, was not appointed conflict counsel, and his trial attorney did not speak a word in his favor during the plea withdrawal hearing. *See* 459 S.W.3d at 386–88.

In the present case, the conduct of the trial court was markedly different. Upon Paz-Salvador's motion to withdraw his guilty plea, the trial court immediately appointed conflict counsel and set a hearing date. At the hearing, both Paz-Salvador's conflict counsel and trial counsel were present. Unlike *Tigue* or *Rigdon*, conflict counsel stated on the record that there were no issues with the actions of trial counsel; the only argument by conflict counsel was that the plea was entered into involuntarily because the time given to Paz-Salvador to review the plea agreement was inadequate based on his below average intelligence and background. Much like trial counsel, conflict counsel did not argue that Paz-Salvador was incompetent or attempt to present new evidence or witnesses to testify to his competency background. After argument, the trial court noted that,

> the court, having conducted multiple hearings during the course of this trial, especially on the issue of competency, and being very familiar with the records concerning his competency, there was never any determination by any clinician that he was not competent to stand trial. Competency to stand trial on this issue

means specifically that the person involved has the capacity to understand the nature of the proceedings and to adequately assist his counsel in making the proper decisions as to how he wants to proceed with his case.

The trial court then proceeded to deny the motion. Under the circumstances of this case and the contents of Paz-Salvador's motion to withdraw his guilty plea, the hearing held by the trial court was proper.

### B. The Validity of the Plea Agreement.

The validity of a guilty plea must be determined not from specific key words uttered at the time the plea was taken, but from considering the totality of circumstances surrounding the plea. These circumstances include the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made. The trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty.

*Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990) (internal citations omitted). Paz-Salvador argues that his plea was involuntary because, based on his low intellectual functioning, three days was not enough time for him to determine whether it was a good decision to plead guilty and accept a thirty-five-year sentence. Paz-Salvador further argues that the trial court did not use a totality of the circumstances analysis in evaluating his motion and violated *Centers* by focusing on his plea hearing and competency hearing.

The crux of conflict counsel's argument at the hearing regarding Paz-Salvador's plea withdrawal was that Paz-Salvador was too low functioning to understand the terms of the plea deal. Consequently, the trial court discussed the competency hearing testimony. The trial court acknowledged that neither experts' testimony nor their reports indicated that Paz-Salvador was

7

incompetent to stand trial, and therefore, he could assist in the negotiation of a plea deal.[4]

We recognize that "[w]hile solemn declarations in open court carry a strong presumption of verity, the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken." *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001) (citations and quotations omitted). However, "'[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'" *Edmonds*, 189 S.W.3d at 569 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977)). The trial court conducted a lengthy *Boykin* colloquy with Paz-Salvador before accepting his plea. The court, further, had held a two-day competency hearing in which the defense expert did not opine that Paz-Salvador was incompetent and the KCPC expert testified that the issue of competency was not a close call.[5] Therefore, the trial court's finding that the plea was entered into voluntarily was supported by substantial evidence.

---

[4] In fact, the "competency hearing" really boiled down to the defense putting on evidence that Paz-Salvador could barely understand English and the Commonwealth refuting that evidence, mixed in with the results from intelligence tests from both sides indicating that Paz-Salvador was competent. No precedent exists—and Paz-Salvador offers none—that states that an individual is incompetent because he cannot understand English. That issue may grant a defendant the right to have a translator—which Paz-Salvador had throughout each proceeding at issue—but does not bear upon a defendant's competence once he has the services of a translator. *See* KRS 30A.410(1)(b). Further, Paz-Salvador does not argue that the translation provided by the court-appointed translator was improper or deficient in any way.

[5] Further, no merit exists as to the argument that three days was not enough time to review the plea agreement. Trial counsel, not the Commonwealth, initially broached the subject of a plea before trial. The plea was for substantially less time

8

Lastly, Paz-Salvador argues on appeal that the trial court's analysis, as described above, was not a proper totality of the circumstances analysis because the trial court did not consider Paz-Salvador's background. However, the trial court had extensive knowledge of Paz-Salvador's background based on testimony made during the lengthy competency hearing and through the written reports filed by both KCPC and Paz-Salvador's expert. Further, although a citizen of Mexico, Paz-Salvador has been in the United States for fourteen years, is married to an American woman, and has a long history with the legal system of this country.[6] Paz-Salvador's argument that he did not understand the plea agreement because he is a Mexican citizen and spent his youth in Mexico is groundless.

## IV.   Conclusion.

After an extensive review of the record, no support exists for Paz-Salvador's arguments on appeal. Although Paz-Salvador may have thought

---

than the maximum penalty. Trial counsel discussed the plea agreement with Paz-Salvador on Friday, Saturday, and Sunday before Paz-Salvador pled guilty on Monday. Additionally, upon making his motion to withdraw his plea, Paz-Salvador merely stated that the plea was not "fair." No credible argument exists in the present case as to why the three days was not enough time to contemplate the plea agreement. *See United States v. Hyde*, 520 U.S. 670, 671–72, 680, 117 S. Ct. 1630, 1631–32, 1636, 137 L. Ed. 2d 935 (1997) (Court upheld plea agreement which was negotiated on day of trial); *see also* Prentice L. White, *The Judge Made Me Do it: Evaluating How Judicial Expression in Plea Negotiations May Contribute to Wrongful Convictions*, 54 Willamette L. Rev. 137, 148 (2017) (noting that plea negotiations commonly begin as soon as arraignment occurs and often extend up to the first day of trial).

[6] He has previously pled guilty to several DUI's.

that the plea agreement was not "fair" three months after pleading guilty, the trial court appointed conflict counsel, held a proper hearing to review the evidence, and examined the totality of the circumstances before ruling on Paz-Salvador's motion. Therefore, we affirm.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur. Buckingham, J., not sitting.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Beckett
Kenneth Wayne Riggs
Assistant Attorney General

10