## Adams v. Tuggle et al.

July 20, 1945.

752

J. R. Carpenter for appellant.

Eldon S. Dummit, Attorney General, and Dennis Wooton, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 25, 1938, the grand jury of Owen County returned three indictments, each jointly accusing appellant and one Keith of the three separate crimes of (1) breaking into the storehouse of John G. Thomas in Owenton, Kentucky, (2) blowing a safe therein and (3) burning the building and its contents.

At the time of the finding and returning of the indictments appellant was confined in the Jefferson county jail under a federal charge of stealing an automobile in the state of Washington and using it in interstate travel from thence to his home in Georgetown, Kentucky. The first two state indictments were set for trial on the 29th day of October, four days thereafter. The federal charge against appellant had not then been disposed of, and he —in charge of the sheriff of Owen County and the U. S. Marshall of the Federal court in Louisville—was returned to the Owen circuit court on the day set for the trial.

The first two indictments (that of blowing open a

safe, and breaking into the storehouse) were read to the defendant and to which he entered a plea of "not guilty." He was then given time to obtain counsel, the one he sought residing in Georgetown, Kentucky. Appellant testified at the hearing of this habeas corpus proceeding in the Lyon circuit court, that he telephoned to the Georgetown counsel but the latter's secretary informed him that the attorney was then temporarily out of his office and would return later. But when court convened after recess nothing had been heard from that counsel, nor did appellant then or again move for either the appointment of counsel to represent him, nor for further time to communicate with the Georgetown counsel. The court then appointed counsel who was given time to and did consult with appellant and they each later returned into court. The record in the Owen circuit court of appellant's conviction then states that "Came the Commonwealth's attorney and the defendant in person, and by attorney, and both sides announced ready for trial and the defendant having been heretofore arraigned in his own proper person entered a plea of guilty as charged in the indictment, to-wit: 'blowing an iron safe.' " Whereupon a jury was selected and fixed his punishment at 20 years' confinement in the penitentiary, but adjudged not to commence until the expiration of any imprisonment which might be imposed upon him upon the trial of the federal offense supra, if he was found guilty thereof. Defendant was then returned back to the Federal authorities and at his later trial he was convicted of the charge therein pending against him and given a four years' prison sentence which he served. At the expiration thereof he was turned over to the proper authorities in Kentucky where he was sent to the penitentiary at Eddyville to serve his prison sentence imposed by the Owen circuit court.

At the expiration of some eighteen months or two years of such confinement, he filed this habeas corpus proceeding against the Warden of that institution in the Lyons circuit court, upon the ground that his trial at Owenton on October 29, 1938, was void because of a number of alleged errors and violations of different sections of both the federal and state constitutions, all of which is stemmed entirely in the main contention, that he did not voluntarily withdraw his first plea of not

guilty in the Owen circuit court at the trial therein, or substitute therefor the plea of guilty, which he stated in his petition for the writ sought by him herein was done by counsel who had been appointed by the court and not by him in person. It will, however, be perceived that the record of that trial emphatically states that such actions (withdrawal of the first plea of not guilty, and substituting therefor the plea of guilty) were made and done "in his own proper person." In testifying at the hearing of the instant case in the Lyon circuit court appellant said that when entering his first plea of not guilty he added the words "upon the ground of insanity." That testimony, however, is neither supported by the record of the Owen circuit court, nor is it alleged in appellant's petition for the writ he seeks, nor is the word "insanity" found anywhere in the entire transcript of appellant's trial, in his testimony given at this hearing. Neither did he testify at the same hearing in the Lyon circuit court that he was, at the time of the commission of the offense charged against him and his codefendant, or at his trial, or at any time since then throughout the seven years that have expired, insane when he committed the crime for which he was convicted in the Owen circuit court.

Counsel complains vigorously that the Owen circuit court, not only precipitately set the case for trial, but likewise erred in a manner to render the judgment of conviction of appellant void in not extending time for preparation for eventual trial. If, however, the plea of guilty was voluntarily made by defendant in withdrawing his former plea of not guilty—and he was not unduly influenced in taking such action by the offer of clemency or the practice of duress, or through some other means rendering the entry of his plea of guilty involuntary—then no extension of time for trial was necessary. There is not a scintilla of allegation or proof of any fraud, mistake or oversight in the entry of appellant's plea of guilty, and absolutely nothing to show that any arbitrary action was taken against him. He, no doubt, narrated to his attorney the facts relative to his connection with the offense of which he was charged, and that attorney came to the conclusion that no legitimate defense could be made following which the plea of guilty was entered.

The fact that appellant suddenly concluded to leave his home in Georgetown and to land in the state of Washington is an arrow pointing to his guilt under the state in-

dictment, as is, also the fact that he neither made nor requested any motion for a new trial in the state prosecu-. tion. Furthermore, he waited practically seven years— two of which were in serving the sentence pronounced under the judgment now complained of as void—before he concluded to seek release through the habeas corpus route. In the circumstances the solemn records of a court may not be set aside by the uncorroborated ipse dixit of such an interested witness—as is the appellant in this case—in an effort to evade the consequences of a conviction imposed upon him.

The chief case relied on by counsel for appellant in support of his motion for the writ is that of Robinson v. Johnston, D. C., 50 F. Supp. 774, 777, which opinion was rendered by a district federal judge for the northern district of California. But the facts of that case are as far removed from those appearing in this record as are the two poles of our globe, and they fit and apply to those in this case about like a number 10 shoe would fit a number 3 foot. In that case Robinson's plea of guilty to the crime with which he was charged was superinduced by the urging of probably everyone who had any connection with the trial, and finally by his parents in order to escape the death penalty.

The mother of the accused in that case conferred in chambers with the Judge who presided at the trial and stated to him "that if her son would not be given the death penalty, she wanted him to plead guilty and had so told him" (her son), following which the Judge advised her "that the death penalty would not be imposed." The father of the accused in that case stated to the Judge that his son was mentally unsound and that he had been twice found to be so by the judgments of two Tennessee courts in Nashville, Tennessee, where the accused resided and where his parents also resided, neither of which findings had ever been modified or set aside. Additional facts of that case need not be recited, since those referred to were more than amply sufficient to show that the proceedings at Robinson's trial were such as to invade "due process of law," and consequently, render his conviction void. We have no such case here. On the contrary this record is barren of any fact sustaining any of the various grounds relied on for the granting of the relief sought.

756

There are additional grounds supporting the judgment appealed from, other than the ones referred to, and which will be found in our domestic cases of Ward v. Hurst, 300 Ky. 464, 189 S. W. 2d 594; McLaughlin v. Barr, 191 Ky. 346, 230 S. W. 204; Jones v. Com., 269 Ky. 772, 108 S. W. 2d 812; Smith v. Buchanan, 291 Ky. 44, 163 S. W. 2d 5, 145 A. L. R. 813; Stonefield v. Buchanan, 289 Ky. 386, 158 S. W. 2d 970, and Department of Public Welfare v. Polsgrove, 250 Ky. 517, 63 S. W. 2d 603. Compare also the case of Stonefield v. Buchanan, 6 Cir., 124 F. 2d 23.

The cases cited emphatically point out that the writ of habeas corpus is not available to release defendant in a criminal prosecution from the consequence of a judgment of conviction, unless the convicting judgment is void. No mere errors in the trial are available to the petitioner, and which conclusion of the courts is rested upon the rule that mere errors may be corrected on an appeal from the convicting judgment when based on no violation of petitioner's fundamental rights as prescribed in the Constitution of the United States or the one of the particular forum of the place of the commission of the offense.

Furthermore, it might be observed that while the writ of habeas corpus is favored by the courts where the facts justify its application, yet it is not to be used as a shield to protect the guilty from the consequences of his crime and to the detriment of the undisturbed peace, safety and quietude of society in general.

The trial judge having denied the writ and dismissed the petition, its judgment is affirmed.