# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

2017-SC-000574-MR

DATE 3/7/19 Kim Redman, DC

CURRY NICELY                                                    APPELLANT

ON APPEAL FROM OHIO CIRCUIT COURT
V.        HONORABLE THOMAS O. CASTLEN, SPECIAL JUDGE
NO. 16-CR-00215

COMMONWEALTH OF KENTUCKY                                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Pursuant to an agreement with the Commonwealth, Appellant Curry Nicely pled guilty to two counts of first-degree criminal abuse and one count of receiving stolen property. He later filed a motion to withdraw his guilty plea, which the trial court denied. Appellant submits that his plea was not voluntary, and alternatively, that the attorney who represented him at the hearing on the withdrawal motion had an actual conflict of interest, rendering him without counsel. He seeks vacation of his sentence and appointment of "conflict-free" counsel. Because the record affirmatively demonstrates that Appellant's plea was voluntary, and counsel's performance at the plea withdrawal hearing was not conflicted or inadequate, we affirm the judgment of the Ohio Circuit Court.

## FACTUAL AND PROCEDURAL BACKGROUND

An Ohio County grand jury returned an indictment in October 2016 charging Nicely with twenty offenses. Alicia Payne was named as a co-defendant on nineteen offenses. Mark Nicely, Appellant's father, was named as a co-defendant on thirteen offenses. Appellant was taken into custody a few days later. Appellant and his father signed a waiver of dual representation and were represented by the same attorney.[1]

Appellant's bail was set at $50,000 cash, and multiple requests for a bond reduction were denied. Nine months after arraignment, Appellant entered a guilty plea to three offenses, criminal abuse in the first degree (child twelve (12) years of age or less) (two counts) and receiving stolen property (property value over $500 but less than $10,000).[2] The other seventeen charges against Appellant were dismissed: second-degree assault (two counts), first-degree wanton endangerment (two counts), abandonment of a minor (two counts), first-degree unlawful imprisonment (two counts), endangering the welfare of a minor (two counts), failure to report dependent neglect/abuse (two counts), third-degree terroristic threatening (two counts), theft by unlawful taking under $1,000,000 (one count), tampering with physical evidence (one

---

[1] Mark Nicely was released on bond prior to his arraignment.

[2] Co-defendant Payne entered a plea to these charges on the same day. The sentencing recommendation for her was the same as Appellant's, and like Appellant, she was released pending sentencing.

2

count), and first-degree persistent felony offender. Appellant was released on bond until sentencing.[3] All charges against Mark Nicely were dismissed.[4]

Shortly before the September 5, 2017 sentencing hearing date, Appellant's attorney filed on his behalf a Criminal Rule (RCr) 8.10[5] motion to withdraw the guilty plea. Counsel based the written motion on newly-discovered evidence; he stated particularly that while being released on bond, exculpatory statements were made to him by co-defendant Payne. Appellant moved at the motion's hearing for a continuance because co-defendant Payne was not present to testify,[6] but the Ohio Circuit Court denied the continuance.[7] However, the court held an evidentiary hearing and heard the other grounds supporting Appellant's motion.

---

[3] About a month later, the Commonwealth moved to revoke the bond. An arrest warrant was issued. The Commonwealth's revocation motion was noticed for hearing on Appellant's originally scheduled sentencing date. Appellant appeared and remained in custody until sentencing two weeks later on September 21, 2017.

[4] Mark Nicely was not named as being complicit in these offenses: theft by unlawful taking under $1,000,000; tampering with physical evidence; failure to report dependent neglect/abuse; terroristic threatening; and receiving stolen property under $10,000.

[5] RCr 8.10 pertinently provides that "any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted."

[6] Co-defendant Payne was not in custody and had absconded Probation and Parole.

[7] The trial court noted that when deciding to enter his plea, Appellant decided to forego a jury hearing evidence that he did not harm the children and was not responsible for the harm the children suffered. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.").

In response to his counsel's prompt to explain how his plea was involuntary, Appellant stated that he succumbed to pressures related to his innocent father being a named co-defendant on thirteen of the charges and his mother's cancer no longer being in remission, a health status he learned just prior to entering into the plea agreement. Appellant's attorney added that the main factor related to Appellant's plea was his father getting a dismissal[8] and his mother's cancer return. Appellant's counsel additionally explained that, after release pending sentencing, Appellant had discovered text messages on his phone which provided evidence contrary to the incriminating timeline information provided by an officer. Appellant did not have access to his phone while incarcerated so it was not until after his plea and his release on bond that the texts came to light.

The trial court denied Appellant's motion, finding he knowingly and voluntarily entered the plea. On the same day, in accordance with the plea agreement, the trial court also entered its final judgment sentencing Appellant to serve a total of twenty years in prison: ten years on each criminal abuse count, to be served consecutively; and five years on the receiving stolen property count, to be served concurrently with the criminal abuse sentences. He now appeals the trial court's denial of his motion to withdraw the guilty plea.

---

[8] Appellant's attorney mentioned other factors which may have played a role in Mark Nicely's case being dismissed: Mark Nicely had no prior criminal history and a witness had given a statement that Mark Nicely had nothing to do with the case.

## ANALYSIS

### I. Appellant's guilty plea is valid and the trial court did not abuse its discretion when denying Appellant's motion to withdraw the plea.

Appellant asserts that his guilty plea was not entered voluntarily. He argues, however, that even if the plea were validly entered, the trial court abused its discretion because granting the plea withdrawal motion was the fair and just thing to do. We address each argument in turn.

### A. The guilty plea was made voluntarily.

A criminal defendant's waiver of a constitutional right is valid when he voluntarily, knowingly, and intelligently waives the right. *Brady v. United States*, 397 U.S. 742, 748 (1970); *King v. Commonwealth*, 374 S.W.3d 281, 290 (Ky. 2012) (citations omitted). "Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 565 (Ky. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 241-42 (1969)). When a defendant enters a plea, the court is charged with making sure the defendant is entering the plea intelligently with "a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 243-44.[9] The standard for judging the voluntariness of a guilty plea knowingly entered is essentially whether the plea was "induced by threats (or promises to

---

[9] *Boykin*, 395 U.S. at 243-44 ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.").

5

discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *Brady*, 397 U.S. at 755 (quoting *Shelton v. U.S.*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)); *see also Commonwealth v. Tigue*, 459 S.W.3d 372, 393 (Ky. 2015). If such threats, misrepresentations, or improper promises by the Commonwealth or the trial court did not induce the plea, the plea must stand. *Brady*, 397 U.S. at 755; *Edmonds*, 189 S.W.3d at 566; *see Adams v. Tuggle*, 189 S.W.2d 601, 602 (Ky. 1945).

On July 20, 2017, Appellant filed his motion to enter a guilty plea,[10] and advised the court that he understood the contents of the written motion which he reviewed with his attorney. His plea was taken the same day. There is no suggestion that the trial court failed to engage in an appropriate, required *Boykin* colloquy when Appellant entered his plea. The trial court properly advised Appellant of his constitutional rights at the plea hearing. Appellant clearly stated multiple times that he was entering the guilty plea knowingly and voluntarily and that his plea was made because he was guilty and for no other reason. He indicated that he benefitted from his counsel's assistance and said that he was satisfied with his lawyer's representation. In short, the record

---

[10] The AOC-491 form was used. By signing this form, among other things, Appellant declared his guilt; the guilty plea was freely, knowingly, intelligently, and voluntarily made; and other than the sentencing recommendation contained in the Commonwealth's offer, no one promised him any other benefit in return for the plea nor had anyone forced or threatened him to plead guilty.

indicates that Appellant understood what he was doing and the constitutional rights he was waiving when he entered the guilty plea. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The circumstances surrounding the entry of the guilty plea support affirming the trial court's denial of the motion to withdraw the plea.

A plea of guilty is not unintelligently made merely because a defendant may have "misapprehended the quality of the State's case," *Brady*, 397 U.S. at 757, a misapprehension Appellant apparently infers from information he seemingly acquired after the plea, *i.e.,* that a co-defendant may have been a favorable witness and he had evidence in his own possession (his phone with text messages) which would raise doubt in the Commonwealth's proof against him. Such lack of information at the time of the plea does not negate the truth or reliability of Appellant's plea. Prior to his plea, Appellant had the requisite factual knowledge to assert his innocence. The only changed circumstance between when Appellant pled guilty and when he moved to withdraw the plea was the potential strength of his case.

Likewise, the pressures described by Appellant at the time of his plea entry are not circumstances constituting coercion. A plea of guilty is not invalid because it may have been entered to avoid the Commonwealth's prosecution of a family member or to secure release from incarceration to spend time with an ill family member. *See Brady*, 397 U.S. at 756-57; *Blanton v. Commonwealth*, 516 S.W.3d 352, 356, 357 (Ky. App. 2017) (defendant's calculated decision to enter a plea which would result in his immediate release

7

and allow him to see his terminally ill mother did not render the plea involuntary).

> That the [pressure] caused the plea . . . does not necessarily prove that the plea was coerced and invalid as an involuntary act.
>
> The State to some degree encourages pleas of guilty at every important step in the criminal process. For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family. All these pleas of guilty are valid in spite of the State's responsibility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction.
>
> Of course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. But nothing of the sort is claimed in this case . . . .

*Brady*, 397 U.S. at 750.

Substantial evidence supports the trial court's conclusion that Appellant knowingly and voluntarily entered the plea. *Edmonds*, 189 S.W.3d at 566 (citations omitted). Accordingly, his plea must be upheld.

**B. The denial of the plea withdrawal was not an abuse of discretion.**

Appellant argues that even if he entered the plea voluntarily, the trial court abused its discretion when denying his motion to withdraw the plea. Like the defendant in the recently-decided *Thomas v. Commonwealth*, 2016-SC-

8

000593-MR, 2017 WL 5023098 (Ky. Nov. 2, 2017), Appellant complains that the federal test for withdrawing a plea, whether fair and just reasons support the withdrawal, should be applied when the trial court hears an RCr 8.10 motion.[11] In particular, he seeks application of the seven factors identified in *United States v. Hockenberry*, 730 F.3d 645 (6th Cir. 2013), which help guide whether a federal defendant may withdraw a guilty plea under Federal Rules of Criminal Procedure (Fed. R. Crim. P.) 11(d)(2)(B).[12]

The seven, non-exclusive *Hockenberry* factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence;

---

[11] Before this Court, this issue has been primarily considered in unpublished cases. We previously noted that this Court has declined to adopt this approach in our criminal rules. *Britton v. Commonwealth*, 2013-CA-001732-MR, 2015 WL 3637486, at *3 (Ky. June 11, 2015) (citing *Bowman v. Commonwealth*, 2005–SC–000234–TG, 2006 WL 141586, at *9 (Ky. Jan. 19, 2006), and *Commonwealth v. Pridham*, 394 S.W.3d 867 (Ky. 2012)). In particular, Justice Scott's dissent in *Bowman*, 2006 WL 141586, at *9, advocated for the use of this "fair and just" analytical approach (under then Fed. R. Crim. P. 32(d)) when a reviewing court considers newly discovered evidence within the totality of circumstances surrounding a guilty plea. He stated,

> Adding a "fair and just" standard in circumstances such as this, brings the standard for withdrawal of one's plea closer to the standard for new trial, which is where it should be for newly discovered evidence. Therefore, under the facts and circumstances as occurred here, the standard for setting aside a plea should mimic, or at least be consistent with, the standard as applied to considerations of newly discovered evidence on motions for new trial.

In *Brock v. Commonwealth*, 2015-SC-000257-MR, 2016 WL 4487506 (Ky. Aug. 25, 2016), and *Pridham*, 394 S.W.3d 867, the issue was not preserved and not addressed.

In *Blanton v. Commonwealth*, 516 S.W.3d 352, 357 (Ky. App. 2017), the Court of Appeals rejected the proposed application of Fed. R. Crim. P. 11(d)(2)(B) via the test set forth in *Hockenberry* as not constitutionally applicable to the state courts.

[12] Fed. R. Crim. P. 11(d)(2)(B) provides: "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal."

9

(4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 662 (citations omitted).

After the 1983 amendment to Fed. R. Crim. P. 32(d) (now Fed. R. Crim. P. 11(d)(2)(B)) expressly adopted the "fair and just" standard, the Sixth Circuit stated in *United States v. Triplett*, that "[i]n determining whether there is a fair and just reason to grant a motion to withdraw a plea, the district *court must review all the circumstances surrounding the original entrance of the plea* as well as the motion to withdraw" and identified reasons for consideration now enumerated within the *Hockenberry* factors. 828 F.2d 1195, 1196-97 (6th Cir. 1987) (emphasis added). We recognized the *Hockenberry* factors' redundancies to plea validity considerations in *Thomas* and declined to alter our precedent. 2017 WL 5023098, at *2.

When a defendant moves under RCr 8.10 for a plea withdrawal, he has the burden of proving that the withdrawal of a voluntarily entered plea is justified. *See Edmonds*, 189 S.W.3d at 566; *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002). Granting the withdrawal is a matter left to the trial court's discretion. *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001). "[O]ur abuse of discretion standard takes into account the fairness and reasonableness of the trial court's decision making," *Britton*, 2015 WL

10

3637486, at *3, the same standard used by the federal courts when reviewing application of the *Hockenberry* factors; *see United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir. 1991).

Appellant complains that the trial court appeared to rely solely on the plea colloquy when denying his motion. However, properly, the trial court considered only those reasons offered by Appellant for withdrawing his plea. Under the grounds offered in support of the motion, we cannot say that the trial court's denial of Appellant's RCr 8.10 motion was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

As to the circumstances surrounding the motion, such as minimal time elapsing between the plea and motion and the inability to move for withdrawal earlier, which Appellant now targets through *Hockenberry* as reasons his withdrawal motion should have been granted, these reasons were not specifically presented to the trial court for consideration. Because these reasons were not preserved for review, we decline to address them further here.

## II. Appellant was not denied counsel during the plea withdrawal hearing.

Appellant alternatively asserts his counsel was conflicted during the hearing on the withdrawal motion and seeks vacation of his convictions and a remand with directions to appoint him a conflict-free attorney. He argues first that his counsel was conflicted because of the plea withdrawal motion. He also argues that his counsel was potentially conflicted because he also represented

11

Mark Nicely, Appellant's father. His claim that he was denied conflict-free counsel is unpreserved, but he insists *Beard v. Commonwealth*, 302 S.W.3d 643 (Ky. 2010), requires reversal if an actual conflict exists, regardless of preservation. Alternatively, he seeks palpable error review if he is unsuccessful on his Sixth Amendment denial of counsel claim.

## A. Defense counsel was not conflicted by the withdrawal motion.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (citation omitted). To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a defendant must establish that an actual conflict of interest adversely affected his attorney's performance; a *potential* conflict of interest is insufficient to warrant relief. S*ee Kirkland v. Commonwealth*, 53 S.W.3d 71, 75 (Ky. 2001) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). An *actual* conflict exists when an attorney actively represents incompatible interests; it is more than a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

*Commonwealth v. Tigue*, 459 S.W.3d 372 (Ky. 2015) and *Zapata v. Commonwealth*, 516 S.W.3d 799 (Ky. 2017), are two recent cases decided by this Court in which an actual conflict of interest was found. Appellant cites both cases as supporting his arguments.[13] In those cases the motion to

---

[13] Appellant also cites non-binding *Sturgill v. Commonwealth*, 533 S.W.3d 204 (Ky. App. 2017), and *Ruano v. Commonwealth*, 2014-SC-000469-MR, 2015 WL

withdraw the plea was based on allegations of defense counsel's misconduct, *i.e.*, defense counsel coerced the plea. Under such circumstances, it is obvious that a lawyer cannot act as an advocate on his client's behalf and give testimony adverse to that client's interests in the same proceeding. Upon review of these cases, we disagree with Appellant's contention that he did not have conflict-free counsel representing him on his plea withdrawal motion and is entitled to relief.

In *Tigue*, soon after entering his guilty plea, the defendant decided to move the court for its withdrawal. 459 S.W.3d at 380. His efforts to have his attorneys assist with the withdrawal motion were unsuccessful and a written motion was not filed before the sentencing hearing. *Id.* At the sentencing hearing, the defendant orally asked to withdraw his plea and his attorneys did not assist with the motion. *Id.* at 381. The defendant stated that the plea was involuntary, asserting he had been threatened and his counsel never showed any interest in defending him, as reflected in letters Tigue sent to the court. *Id.* at 381, 387. The trial court denied the motion but acknowledged defendant's allegations of his counsel's misconduct in letters to the court and the likelihood he would pursue post-judgment remedies. *Id.* at 381.

Tigue later filed a *pro se* RCr 11.42 ineffective assistance of counsel motion, and then appointed counsel filed a supplemental motion asking for relief on other grounds — denial of counsel at the withdrawal motion's hearing

9243549 (Ky. Dec. 17, 2015). He cites *Ruano* as persuasive authority, noting it was cited by the Court of Appeals in *Sturgill* and this Court in *Zapata*.

13

and denial of conflict-free counsel. *Id.* On discretionary review, this Court concluded that the hearing on the withdrawal motion was a critical stage of the proceedings and that Tigue was denied counsel in his efforts to withdraw the plea, *i.e.*, his efforts to contact counsel after the plea entry were fruitless and during the plea discussion his counsel offered no assistance in pursuing the motion. This Court further held that Tigue was denied assistance of conflict-free counsel during the hearing because the defendant's coercion allegations placed his attorneys in a position of having to defend themselves and potentially making statements adverse to their client. These circumstances created an actual conflict of interest adversely affecting the attorneys' performance.

In *Zapata*, the defendant's counsel prepared a plea withdrawal motion, indicating she took no position on the motion. 516 S.W.3d at 801. Afterward, Zapata filed another withdrawal motion, requesting an evidentiary hearing based upon an ineffective assistance of counsel allegation. *Id.* At the hearing, Zapata argued his counsel deceived him by informing him that he could withdraw his plea any time before sentencing with no problem. The trial court did not hold an evidentiary hearing and no sworn testimony was taken. *Id.* Although defense counsel did not assist Zapata at the plea withdrawal motion hearing and informed the court that she was put in an awkward position by her client's allegations toward her, the trial court concluded Zapata, acting as hybrid counsel, was representing himself "at least in part." *Id.* This Court, however, concluded an actual conflict existed based upon the defendant's

14

allegations and counsel's indication that a response to the allegations was not in her client's interest. As in *Tigue*, we held the defendant was deprived of conflict-free counsel at the plea withdrawal motion hearing. *Id.* at 802-03.

In the instant case, defense counsel filed and pursued the motion for the plea withdrawal. There is no indication that the motion was against defense counsel's advice. Moreover, defense counsel advocated for the plea withdrawal during the hearing based upon both the exculpatory evidence grounds and "pressures faced" grounds.

Unlike in *Tigue* and *Zapata*, Appellant did not present an ineffective assistance of counsel claim,[14] nor did he allege defense counsel coerced his plea when seeking to withdraw it. When his counsel asked him to explain to the court how his guilty plea was involuntary, Appellant stated, "the pressure was being put on — because my father was also indicted in this case and my dad had nothing to do — he's never been around nothing, anything said in this — for me to take a plea on it. Well, also, that morning, five minutes in that little room, I find out my mother's cancer is back. . . . To be quite honest, I would have said anything at the time to go home and spend time with her."

Appellant's testimony reflects that he was experiencing family pressures, and that some of that pressure may have come from plea bargaining in a case where his father also faced charges. Appellant, however, now suggests that his

---

[14] Appellant did not allege that he informed counsel of the texts prior to the plea and his counsel failed to investigate the texts. Appellant acknowledges that the exculpatory evidence claims did not directly create a conflict with trial counsel.

15

plea was coerced by his attorney. He points to his testimony stating that without being asked to explain all the circumstances surrounding how the "pressure was put on him," he may have been referring to his counsel pressuring him to enter the plea, creating a conflict of interest. We cannot possibly find Appellant's testimony comparable to that in *Tigue* and *Zapata*. Appellant had the opportunity to present his plea challenges to the trial court, but unlike *Tigue* and *Zapata*, there were no allegations that placed the Appellant's trial counsel "in the untenable position of defending [his] own interests which were adverse to [his] clients." *Zapata*, 516 S.W.3d at 803.

Appellant's other efforts to show his defense counsel was conflicted when engaging in practices which are usually proper, often necessary, or prescribed by the criminal justice process are likewise unpersuasive. Although Appellant argues otherwise, it is of no consequence that the written withdrawal motion contained only the exculpatory evidence grounds when defense counsel also argued the "pressures faced" grounds during the motion's hearing. *See Tigue*, 459 S.W.3d at 386. Without other evidence of defense counsel's conflict, the motion cannot be seen as anything but a valid motion. A conflict is also not created because defense counsel candidly responded to the trial court's question, acknowledging he was confident at the plea hearing when he conveyed that the plea was voluntarily, freely, and intelligently entered but later was arguing that Appellant's plea was not voluntary. He insisted the biggest factor considered by Appellant at that point was that his father was getting a dismissal of his case and his mother's cancer had returned so he

16

wanted to see her.  Under the circumstances presented here, we do not view defense counsel's advocacy for his client to be tainted.

The facts here are plainly unlike those in *Tigue* and *Zapata*.  Appellant's counsel was not burdened by an actual conflict of interest and Appellant was not otherwise denied counsel during the plea withdrawal motion hearing.

## B. Defense counsel's potential conflict due to dual representation was waived.

Appellant further identifies ways his defense attorney may have been conflicted because he also represented Appellant's father.  Beyond his allegation that his plea may have been coerced by defense counsel to get his co-defendant father's charges dismissed, Appellant also states that defense counsel had an interest in the plea not being withdrawn because Mark Nicely could have been potentially charged again.  Appellant further alleges that the terms of the plea agreement suggest a conflict of interest because he accepted a plea offer on three charges for a recommended twenty-year sentence when it appears twenty years is the absolute maximum he could have received no matter how many of the other charges he was convicted of and what sentences were imposed.  As he paints it, he took a maximum sentence while his co-defendant father walked free.[15]

To reiterate, a *potential* conflict of interest does not warrant relief. Appellant must show an actual conflict of interest which affected his attorney's

---

[15] Although not addressed by Appellant, this was the same plea deal offered and accepted by co-defendant Payne.

performance adversely. *Beard*, 302 S.W.3d at 646. Appellant has not made that showing. Appellant signed a waiver of dual representation stating he understood the possibility of a conflict of interest on the part of his attorney, that what may be or seem to be in the interest of one defendant may not be in the interest of the co-defendant. Afterward, Appellant never raised any possible conflict of interest arising from the dual representation in the trial court. This new assertion appeared before this Court.

Having failed to preserve the issue, Appellant seeks also RCr 10.26 relief. RCr 10.26 provides: "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." However, under the facts of this case, we do not find a palpable error, an error which "is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Harp v. Commonwealth*, 266 S.W.3d 813, 823 (Ky. 2008) (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)). Without such an error, relief under RCr 10.26 is not available to Appellant.

## CONCLUSION

Upon review of the record, we conclude that Appellant's guilty plea is valid, and the trial court did not abuse its discretion when denying the plea withdrawal motion. Appellant was not denied the assistance of counsel on his

18

plea withdrawal motion. Accordingly, we affirm the judgment of the Ohio Circuit Court.

C.J. Minton; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur.


COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Mark Barry
Assistant Attorney General
Office of Criminal Appeals