THOMPSON, JUDGE:
Devante A. Marks appeals from an order of the Ballard Circuit Court denying his motion to withdraw his guilty plea pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.10. He argues that the trial court erred in not permitting him to withdraw his guilty plea, not appointing substitute counsel and not conducting an evidentiary hearing. He also appeals from that portion of the trial court's judgment and sentence imposing court costs and jail fees. We agree with Marks that reversal and remand is required because after Marks expressed his desire to withdraw his guilty plea, substitute counsel should have been appointed.
Marks was indicted for first-degree robbery and first-degree wanton endangerment arising from the robbery of a convenience store with the use of a gun. At arraignment, Marks's co-defendant was appointed a Department of Public Advocacy (DPA) attorney. Because of the conflict between representing Marks and his co-defendant, DPA contracted with a private attorney to provide Marks representation.
On March 4, 2016, Marks entered a guilty plea to first-degree robbery in accordance with a plea agreement. In return for his guilty plea, the Commonwealth recommended *464 a sentence of eleven-years' imprisonment and agreed to dismiss the wanton endangerment charge. During the plea hearing, the trial court conducted a colloquy pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Marks affirmed under oath that he had reviewed the plea agreement with his attorney before signing it and understood it. He further affirmed he was properly informed of the range of penalties and the rights he was waiving because of his guilty plea. In response to the trial court's questions, Marks affirmed that his plea was freely and voluntarily given and was not coerced. Marks further affirmed he discussed the case with his attorney and was satisfied with defense counsel's representation. At that point, Marks's co-defendant indicated he wanted more time to consult with his attorney.
After the trial court afforded both men time to consult with their defense counsels, it continued the Boykin colloquy. Marks's defense counsel stated he had informed Marks that first-degree robbery was a violent offense and he would not be eligible for parole until after serving 85% of his eleven-year sentence. Ultimately, the trial court found Marks's guilty plea was knowingly, intelligently and voluntarily entered. Sentencing was set for March 18, 2016.
When Marks appeared for sentencing on March 18, 2016, he informed the trial court that he wanted to withdraw his guilty plea. Marks claimed he had been unable to contact defense counsel regarding his desire to withdraw his plea because counsel set up his telephone to where Marks could not contact him. Defense counsel denied that his phone was not accessible by Marks and indicated he would file a motion if Marks wanted to withdraw his guilty plea. Marks indicated he did not want to speak to his counsel and stated he wanted to withdraw his plea because he had been "played." The trial court declined to allow Marks to withdraw his guilty plea through an oral motion but granted him leave to file a written motion.
On March 21, 2016, defense counsel, who negotiated the plea agreement, filed a motion to withdraw Marks's guilty plea. In that motion, the following claims were made: (1) Marks had not previously been in adult court and did not fully understand the proceedings and the consequences of his plea; (2) he did not fully contemplate the questions asked by the trial court when he entered his guilty plea to make an informed decision; and (3) he believed he would receive the same nine-year and one-half year sentence at 20% parole eligibility as did his co-defendant.
On March 22, 2016, defense counsel appeared with Marks for final sentencing. At the time, the trial court questioned Marks about the grounds for his motion to withdraw his guilty plea. No witnesses were sworn, and defense counsel remained silent during the trial court's questioning of Marks.
The presentence investigation (PSI) report revealed that despite Marks's claim that he never been in adult court, he had been sentenced in Illinois when he was eighteen years and five months old. From the discussion among the Commonwealth, defense counsel and the trial court, it was unclear to those present whether Marks was an adult when he committed the Illinois offense. Defense counsel stated that he had not reviewed the PSI and offered no argument as to whether Marks's Illinois conviction could be used to support a persistent felony charge in Kentucky.
After learning of Marks's Illinois conviction, the Commonwealth indicated it did not oppose Marks's motion but that if the plea was withdrawn, it would investigate whether the Illinois conviction could support a persistent felony offender charge in *465 Kentucky. The trial court then gave Marks additional time to confer with counsel about whether he wanted to pursue his motion. After a discussion with counsel, Marks stated he wanted to pursue the withdrawal of his guilty plea.
The trial court denied Marks's motion to withdraw his guilty plea and sentenced Marks in accordance with the plea agreement.
During the sentencing hearing, the trial court asked Marks if he was "able bodied" and could work. Marks was also asked if he had money in his commissary account and responded he did not. The trial court found that Marks could pay court costs of $185 and a jail fee of $22 per day for the 68 days he was in jail, deferred until twelve months after his release.
On March 24, 2016, Marks sent a letter to the trial court explaining why he was asking to withdraw his plea, including that he received ineffective assistance of counsel. When the trial court received the letter, the final judgment and sentence had been entered.
Under our criminal rules of procedure, a defendant may withdraw a guilty plea "[a]t any time before judgment." RCr 8.10. As stated in Rigdon v. Commonwealth, 144 S.W.3d 283, 288 (Ky. App. 2004), "[i]f the plea was involuntary, the motion to withdraw it must be granted."
"Whether to deny a motion to withdraw a guilty plea based on a claim of ineffective assistance of counsel first requires 'a factual inquiry into the circumstances surrounding the plea, primarily to ascertain whether it was voluntarily entered." ' Id. (quoting Bronk v. Commonwealth , 58 S.W.3d 482, 489 (Ky. 2001) ). A plea is involuntary if the facts alleged, if true, "would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth Amendment, or would otherwise clearly render the plea invalid." Commonwealth. v.Pridham , 394 S.W.3d 867, 874 (Ky. 2012).
While "[s]olemn declarations in open court carry a strong presumption of verity[,]" Edmonds v. Commonwealth, 189 S.W.3d 558, 569 (Ky. 2006), trial courts must be cautious about denying an evidentiary hearing based solely on a satisfactory Boykin colloquy. "[T]he validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken." Bronk , 58 S.W.3d at 487. The trial court is required to examine the voluntariness of the plea based on the "the totality of the circumstances surrounding the plea." Centers v. Commonwealth , 799 S.W.2d 51, 54 (Ky. App. 1990).
While the trial court is required to permit an involuntary plea to be withdrawn, RCr 8.10 also permits the withdrawal of a voluntary plea. Rigdon , 144 S.W.3d at 288. The decision to permit a voluntary plea to be withdrawn is within the trial court's discretion. Id.
As matter of first impression, in Commonwealth v. Tigue , 459 S.W.3d 372, 384 (Ky. 2015), the Court held that "a motion to withdraw a guilty plea made before entry of the final judgment of conviction and sentence is a 'critical stage' of the criminal proceedings to which the right to counsel attaches." Having held that the right to counsel attaches to a proceeding to withdraw a guilty plea, our Supreme Court delved into the narrower question of whether that right is afforded when the same defense counsel who negotiated and advised a client to accept a plea later represents that client in the guilty plea withdrawal proceeding.
Believing the plea negotiated and pled to was one beneficial to Tigue, Tigue's counsel *466 did not actively advocate Tigue's position at the hearing to withdraw the plea. Our Supreme Court concluded that defense counsel's failure to advocate Tigue's desire to withdraw the plea was not necessarily ineffective assistance of counsel but was a complete denial of counsel. The Court held the Sixth Amendment's right to counsel provision required much more than an attorney's physical presence at the hearing. Id. at 385. Noting that the decision to withdraw a guilty plea is personal to the accused and not a matter of strategy to be made by counsel, the Court held that counsel's silence and refusal to advocate for the withdraw of the plea "is no different than not being present at all. It is a complete denial of counsel." Id. at 386.
Our Supreme Court also found troublesome the inherent contradiction of vehemently negotiating a plea deal for a client that defense counsel believes to be favorable and representing to the court the plea was being knowingly, intelligently and voluntarily entered and then later arguing that same plea should be withdrawn. Counsel would in effect be admitting inadequate representation was provided or be required to contradict the defendant's allegations. Id. at 388.
Soon after Tigue , the Supreme Court rendered its opinion in Ruano v. Commonwealth , 2014-SC-000469-MR, 2015 WL 9243549 (Ky. 2015) (unpublished). Although Ruano is unpublished,[1] our Supreme Court later applied the same reasoning and, therefore, it is highly persuasive.
Ruano sought to withdraw his guilty plea at sentencing. He argued that when he entered his guilty plea, he was concerned about his safety if he was released from prison, he was given less than twenty-four hours to review the plea offer and pressured by the Commonwealth's late notice of its intent to seek the death penalty. Ruano's counsel, who negotiated the plea deal, informed the trial court that Ruano's decision to withdraw the guilty plea was against her advice.
The trial court conducted an informal hearing on the motion to withdraw. Neither Ruano or his counsel were placed under oath. The trial court simply reminded Ruano of the Boykin colloquy and denied the motion. Id. at 2. Our Supreme Court was critical of the proceeding for two reasons.
First, it expressed disfavor with the trial court's decision not to conduct an evidentiary hearing. It stressed that a sufficient Boykin colloquy does not foreclose the possibility a plea is involuntary. Id.
Our Supreme Court reiterated its concern expressed in Tigue that there is an inherent conflict when counsel is placed in the "untenable position" of representing a defendant in the plea negotiation process and later attempting to represent the same defendant in the plea withdrawal process. The Court found that the conflict constituted a manifest injustice and review was proper even in the absence of preservation. Id. at 4.
Ruano was extensively relied on in Zapata v. Commonwealth, 516 S.W.3d 799 (Ky. 2017). Zapata claimed his counsel was ineffective during the plea process alleging, "among other things, that his counsel deceived him when she informed him he could withdraw his plea any time before sentencing with 'no problem' and that his plea was not voluntarily entered." Id. at 801. Again, the Court was presented with the situation where defense counsel who negotiated the plea agreement was silent at the informal hearing to withdraw the *467 plea and left the defendant to argue the motion alone. Id. at 802.
For the third time in just two years, our Supreme Court concluded the defendant was denied counsel. Consistent with its prior opinions, the Court held that an evidentiary hearing was required and that the failure to appoint substitute counsel created a manifest injustice. Id. at 803.
With the benefit of Tigue , Ruano and Zapata , and under similar facts, this Court decided Sturgill v. Commonwealth 533 S.W.3d 204 (Ky. App. 2017). Defense counsel informed the trial court at sentencing that the motion was against his advice and did not advocate the defendant's position. This Court observed that "while counsel made the motion to withdraw in form, he offered Sturgill no assistance in accomplishing its objective. Even if counsel did not believe that he could prove that the plea agreement was actually involuntary, he could have urged the court to exercise its discretion to set it aside." Id. at 210. Following Supreme Court precedent, this Court concluded that Sturgill was denied counsel and reversed.
Based on Supreme Court precedent and, as that precedent was interpreted in Sturgill , we are required to reverse. The Commonwealth may be correct that Marks is a foolish man for attempting to withdraw a favorable plea deal and his fate may be far worse than eleven-years' incarceration if he is tried before a jury. However, as our Supreme Court has instructed, the decision to withdraw the plea is his and he is entitled to counsel who will advocate that decision without the conflict of counsel's interest in preserving a plea deal that he negotiated and advised his client to accept.
As noted, Tigue was a case of first impression. It not only established a right to counsel in RCr 8.10 proceedings, but also established that defense counsel and the trial court should be wary when the same defense counsel who represented the defendant in the plea process then represents the defendant in the plea withdrawal process. Following the reasoning of the Supreme Court, we conclude that while we cannot say that defense counsel was ineffective in negotiating the plea deal and advising Marks to accept what appears to be a favorable deal, we cannot say defense counsel was conflict-free. Although our Supreme Court has stopped short of requiring the appointment of substitute counsel, to avoid any possibility that counsel will be denied in the plea withdrawal proceeding, the better practice would have been to substitute counsel at the time Marks expressed a desire to withdraw his guilty plea. By substituting counsel, defense counsel would have avoided the untenable position of arguing conflicting positions and Marks would have been provided conflict-free counsel to argue any grounds to withdraw his plea.
The relief to which Marks is entitled was established in Tigue . We will "rewind this matter to the point in time when [Marks] had already entered his plea but before he was sentenced." Tigue , 459 S.W.3d at 390. At that point, Marks may seek to withdraw his guilty plea and will be entitled to assistance of counsel. Id.
Marks also argues that the trial court erred in imposing court costs and jail fees. Because we are reversing and remanding on the issue of Marks's motion to withdraw his guilty plea, it is not proper for this Court to decide that issue. However, we caution the trial court that when a final sentence is imposed on Marks, there must be some reasonable basis to believe that he can or will soon be able to pay, the imposition of court costs. Butler v. Commonwealth , 367 S.W.3d 609, 616 (Ky. App. 2012).
*468 The imposition of jail fees is governed by KRS 441.265(1), which provides that "[a] prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement ... except for good cause shown." As stated in Jones v. Commonwealth. , 382 S.W.3d 22, 33-34 (Ky. 2011), " 'good cause shown,' which in some circumstances, could include the inability to pay. Plus, in setting the rate to be charged, the jailer is directed to consider 'the ability of the prisoner confined to the jail to pay, giving consideration to any legal obligation of the prisoner to support a spouse, minor children, or other dependents." '
For the reasons stated, we reverse the order denying Marks's motion to withdraw his guilty plea. The case is remanded for further proceedings consistent with this opinion.
CLAYTON, CHIEF JUDGE, CONCURS.
KRAMER, JUDGE, CONCURS IN RESULT ONLY.

This Court may cite unpublished cases pursuant to CR 76.28(4)(c).