RENDERED: SEPTEMBER 26, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0704-MR

GARY DEAN ADAMS      APPELLANT

v.      APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 22-CR-00058

COMMONWEALTH OF KENTUCKY      APPELLEE

AND

NO. 2024-CA-0705-MR

GARY DEAN ADAMS      APPELLANT

v.      APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 22-CR-00059

COMMONWEALTH OF KENTUCKY      APPELLEE

AND

NO. 2024-CA-0706-MR

GARY DEAN ADAMS      APPELLANT

|                                  | APPEAL FROM LETCHER CIRCUIT COURT |
| v.                               | HONORABLE JAMES W. CRAFT, II, JUDGE |
|                                  | ACTION NO. 22-CR-00060 |

COMMONWEALTH OF KENTUCKY                                      APPELLEE

AND

NO. 2024-CA-0707-MR

GARY DEAN ADAMS                                      APPELLANT

|                                  | APPEAL FROM LETCHER CIRCUIT COURT |
| v.                               | HONORABLE JAMES W. CRAFT, II, JUDGE |
|                                  | ACTION NO. 22-CR-00061 |

COMMONWEALTH OF KENTUCKY                                      APPELLEE

AND

NO. 2024-CA-0708-MR

GARY DEAN ADAMS                                      APPELLANT

|                                  | APPEAL FROM LETCHER CIRCUIT COURT |
| v.                               | HONORABLE JAMES W. CRAFT, II, JUDGE |
|                                  | ACTION NO. 22-CR-00062 |

COMMONWEALTH OF KENTUCKY                                      APPELLEE

AND

NO. 2024-CA-0709-MR

GARY DEAN ADAMS                                                 APPELLANT

                        APPEAL FROM LETCHER CIRCUIT COURT
v.                      HONORABLE JAMES W. CRAFT, II, JUDGE
                        ACTION NO. 22-CR-00063

COMMONWEALTH OF KENTUCKY                                        APPELLEE

AND

NO. 2024-CA-0710-MR

GARY DEAN ADAMS                                                 APPELLANT

                        APPEAL FROM LETCHER CIRCUIT COURT
v.                      HONORABLE JAMES W. CRAFT, II, JUDGE
                        ACTION NO. 22-CR-00064

COMMONWEALTH OF KENTUCKY                                        APPELLEE

AND

NO. 2024-CA-0711-MR

GARY DEAN ADAMS                                                 APPELLANT

v.               HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 22-CR-00065


COMMONWEALTH OF KENTUCKY           APPELLEE

AND


NO. 2024-CA-0712-MR


GARY DEAN ADAMS           APPELLANT


APPEAL FROM LETCHER CIRCUIT COURT

v.               HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 22-CR-00068


COMMONWEALTH OF KENTUCKY           APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  In these consolidated criminal matters,[1] Gary Dean Adams

appeals from the judgments of the Letcher Circuit Court convicting him of a

---

[1] This Court consolidated the nine appeals for all purposes by order entered September 30, 2024.

multitude of felony charges pursuant to a plea agreement and sentencing him to concurrent sentences totaling ten years. Adams seeks review of the trial court's denial of his oral motion to withdraw his guilty pleas at the sentencing hearing without permitting him to file a written motion or appointing conflict counsel. Because we hold that the trial court did not have sufficient information to properly evaluate the motion, we vacate and remand.

On April 5, 2022, the Letcher County grand jury charged Adams with multiple felonies in 11 separate indictments; these appeals involve the charges in nine of these indictments,[2] which we shall summarize below:

| Circuit Court Case Number and Appeal Number | Date of Offense/s | Charges |
|---|---|---|
| No. 22-CR-00058 No. 2024-CA-0704-MR | April 2015 | One count of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (Kentucky Revised Statutes (KRS) 510.110(1)(a)) (Class D Felony) |
| No. 22-CR-00059 No. 2024-CA-0705-MR | May 2015 through December 2015 | Four counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony) |

[2] The remaining two indictments (Nos. 22-CR-00066 and 22-CR-00067) were dismissed pursuant to the plea agreement.

| No. 22-CR-00060<br>No. 2024-CA-0706-MR | January 2016 through December 2016 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony) |
|---|---|---|
| No. 22-CR-00061<br>No. 2024-CA-0707-MR | January 2017 through December 2017 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony) |
| No. 22-CR-00062<br>No. 2024-CA-0708-MR | January 2018 through December 2018 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony) |
| No. 22-CR-00063<br>No. 2024-CA-0709-MR | January 2019 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony)<br><br>Twelve counts of First-Degree Sodomy of A.H. (KRS 510.070) (Class B Felony)<br><br>Twelve counts of Unlawful Use of an Electronic Device to Induce Minor (A.H.) to Engage in Sexual or Prohibited Activities (KRS |

| | | 510.155(1)) (Class D Felony) |
|---|---|---|
| No. 22-CR-00064<br>No. 2024-CA-0710-MR | January 2020 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony)<br><br>Twelve counts of First-Degree Sodomy of A.H. (KRS 510.070) (Class B Felony)<br><br>Twelve counts of Unlawful Use of an Electronic Device to Induce Minor (A.H.) to Engage in Sexual or Prohibited Activities (KRS 510.155(1)) (Class D Felony)<br><br>Twelve counts of First-Degree Rape of A.H. (KRS 510.040(1)(a)) (Class B Felony) |
| No. 22-CR-00065<br>No. 2024-CA-0711-MR | February 2019 through December 2019 | Twelve counts of First-Degree Sexual Abuse of A.H., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony)<br><br>Twelve counts of First-Degree Sodomy of A.H. (KRS 510.070) (Class B Felony) |

| | | Twelve counts of Unlawful Use of an Electronic Device to Induce a Minor to Engage in Sexual or Prohibited Activities (KRS 510.155(1)) (Class D Felony) |
|---|---|---|
| No. 22-CR-00068 No. 2024-CA-0712-MR | July 2013 through December 2013 | Six counts of First-Degree Sexual Abuse of S., a female who was less than 16 years while he was 21 years old or more (KRS 510.110(1)(a)) (Class D Felony)<br><br>Six counts of First-Degree Sodomy of S. (KRS 510.070) (Class B Felony)<br><br>Six counts of Unlawful Use of an Electronic Device to Induce Minor (S.) to Engage in Sexual or Prohibited Activities (KRS 510.155(1)) (Class D Felony)<br><br>Six counts of First-Degree Rape of S. (KRS 510.040(1)(a)) (Class B Felony) |

The sexual abuse and unlawful use of an electronic device charges carried a

sentence range of one to five years' imprisonment, and the rape and sodomy

charges carried a range of 10 to 20 years' imprisonment.

Adams, while represented by attorney Donald Kyle Deskins,[3] entered not guilty pleas in each case at his arraignment on April 27, 2022. The trial court held and rescheduled numerous pretrial conferences after that date, where the parties discussed the voluminous discovery and that plea negotiations were taking place. In 2023, attorney Gerald DeRossett began representing Adams. The court eventually scheduled a jury trial for January 2024 and consolidated the cases for purposes of trial.

On January 3, 2024, days prior to the scheduled trial, Adams, through counsel, moved the court to enter guilty pleas to the above charges based upon the Commonwealth's offers. In exchange for his pleas, Adams would receive one-year sentences for the sexual abuse and unlawful use of an electronic device charges and ten-year sentences for the sodomy and rape charges, which would all run concurrently for a total sentence of ten years.

The trial court held a guilty plea hearing on January 4, 2024. The court first went over the constitutional rights Adams would be giving up by entering into the guilty pleas. It then asked about his education level (high school), whether he was under the influence of alcohol, narcotics, or drugs, or in any way impaired in his judgment (Adams denied this), or whether he had been treated for

---

[3] According to footnote 11 in Adams's brief, Attorney Deskins was indicted in August 2023 for the alleged murder of his wife.

mental illness (Adams also denied this). The court then conducted a *Boykin*[4] colloquy with both Adams and Attorney DeRossett. Adams stated that he had had an opportunity to talk with his attorney about the entry of the plea, he had enough time to talk privately with counsel, he was satisfied with the work counsel had done on his behalf, and he did not have any complaints about that work. Adams further stated that he had read and understood the guilty plea motions, and he did not have questions about any part of it. He testified that he had signed each guilty plea voluntarily.

The court explained to Adams that all of the cases were going to run at the same time (concurrently) and that ultimately he would be sentenced to a total of ten years in prison. Adams agreed that that was what he was pleading guilty to. Adams also acknowledged that there were other matters involved with the guilty pleas, including parole eligibility, the need to register with the Sex Offender Registry on a lifetime basis and to complete the sex offender treatment program, and that he would have to serve five years of conditional discharge. Adams again acknowledged that he understood the consequences of his guilty pleas. After the court went through the recommended sentences in each case, including that the sentences would all run concurrently for a total term of imprisonment of ten years, Adams confirmed that was what he had agreed to in exchange for his pleas of guilt.

---

[4] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Adams denied that anyone had promised him anything different or in addition to what the court had read him, and he asserted that no one had threatened, coerced, or caused him to plead guilty. Adams stated that he understood the rights he would be giving up by pleading guilty, which the court had gone over at the beginning of the hearing. Adams confirmed that he was pleading guilty because he was guilty of the charges.

The court then questioned Attorney DeRossett. He confirmed that he had explained all of Adams's constitutional rights to him, that he believed Adams understood his rights and the nature of the proceedings, that the pleas were consistent with his advice, and that Adams was making his pleas voluntarily, knowingly, and intelligently. The court accepted Adams's pleas, finding that his guilty pleas were made knowingly, intelligently, and voluntarily, and ordered the judgments of guilty to be entered as pled. The court noted that the Department of Probation and Parole would be completing a presentence investigation (PSI) report, and a comprehensive sex offender evaluation would also be prepared. Adams would have the opportunity to review both of those with his attorney prior to the sentencing hearing. The court set the matter for a sentencing hearing, which was held on April 10 and April 24, 2024.

At the April 10, 2024, sentencing hearing, Adams informed the court that he had reviewed the PSI report and the sex offender evaluation and found no

mistakes or omissions. Stand-in counsel for Adams stated there was no legal reason that the sentence could not be imposed at that time. The court permitted the victim to read her victim impact statement on the record. The court then stated that it had been reviewing the documents and noticed a discrepancy in the length of the agreed-upon sentences and whether the sentences were to run consecutively or concurrently. The court declined to impose the sentence that day; it wanted Attorney DeRossett to be there.

The hearing continued on April 24, 2024. At the beginning of the hearing, however, Attorney DeRossett informed the court that Adams had told him that morning that he wished to withdraw his guilty pleas and to set the matters for trial. Referencing the confusion at the initial sentencing hearing, the court stated that it had reviewed the plea colloquy and that the record was clear that Adams understood his sentence was for ten years. Counsel responded that he and Adams had reviewed the PSI report and that he understood the sentence was ten years, but Adams still wanted to go to trial. He wanted to "take his chances" with the jury. When the court denied the request, counsel asked the court if sentencing could be reset for the following week so that he could speak with Adams about his request and put something in the record if necessary. Counsel added that Adams had expressed some dissatisfaction with his representation. The court then gave counsel time to go over the PSI and sex offender evaluation reports with Adams,

and when court resumed, counsel stated that there were no factual issues, so far as jail credit. But counsel renewed Adams's motion to withdraw his pleas in their entirety and continued to object to the court's going forward with sentencing. The court ultimately denied the motion to withdraw the guilty pleas and proceeded with sentencing.

The court entered final judgments on April 25, 2024, sentencing Adams pursuant to the plea agreements. His sentences were ordered to be served concurrently with each other and with the other cases for a total of ten years' imprisonment, and upon his release, he would be sentenced to a five-year period of conditional discharge. The court ordered Adams to pay the costs of counseling and therapy for the victims, prohibited him from contact or communication with the victims or their families, and ordered him to register as a sex offender. These appeals now follow.

On appeal, Adams continues to argue that the circuit court abused its discretion in denying the oral motion to withdraw his guilty pleas without first appointing new counsel, permitting him to file a written motion fleshing out his reasoning, or even asking him about the reasons he wanted to withdraw his pleas or his dissatisfaction with his current counsel during the sentencing hearing. The Commonwealth contends that the circuit court did not abuse its discretion.

Kentucky Rules of Criminal Procedure (RCr) 8.10 provides, in relevant part, that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." Generally, our standard of review in an appeal from the denial of a motion to withdraw a guilty plea is whether the trial court abused its discretion. *Prater v. Commonwealth*, 421 S.W.3d 380, 387 (Ky. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). *See also Williams v. Commonwealth*, 229 S.W.3d 49, 50-51 (Ky. 2007), and *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006).

In *Marks v. Commonwealth*, 555 S.W.3d 462, 465 (Ky. App. 2018), this Court explained the process when a defendant alleges his or her plea was involuntary based upon ineffective assistance of counsel:

> As stated in *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004), "[i]f the plea was involuntary, the motion to withdraw it must be granted."
>
> "Whether to deny a motion to withdraw a guilty plea based on a claim of ineffective assistance of counsel first requires 'a factual inquiry into the circumstances surrounding the plea, primarily to ascertain whether it was voluntarily entered.'" *Id*. (quoting *Bronk v. Commonwealth*, 58 S.W.3d 482, 489 (Ky. 2001)). A plea is involuntary if the facts alleged, if true, "would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth

-14-

Amendment, or would otherwise clearly render the plea invalid." *Commonwealth v. Pridham*, 394 S.W.3d 867, 874 (Ky. 2012).

While "[s]olemn declarations in open court carry a strong presumption of verity[,]" *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006), trial courts must be cautious about denying an evidentiary hearing based solely on a satisfactory *Boykin* colloquy. "[T]he validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken." *Bronk*, 58 S.W.3d at 487. The trial court is required to examine the voluntariness of the plea based on the "the totality of the circumstances surrounding the plea." *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990).

Adams cites primarily to *Commonwealth v. Tigue*, 459 S.W.3d 372 (Ky. 2015), in support of his argument that he was entitled to conflict-free counsel while seeking to withdraw his guilty pleas. The defendant in *Tigue* made a *pro se*, oral request to withdraw his plea at the sentencing hearing, after he had expressed to family members that his plea was involuntary and his belief that his counsel had provided negligent representation. *Id.* at 380. The Court determined that Tigue had been denied the assistance of counsel at a critical stage (the sentencing hearing) under the facts of that case, *see id.* at 388, and it crafted the appropriate remedy in such situations:

All [the remedy] requires is for this Court to rewind this matter to the point in time when Tigue had already entered his plea but before he was sentenced. A defendant in such a position *may* again seek to withdraw his guilty plea. And if he does, he is entitled to the

-15-

assistance of counsel (other than the trial counsel he accuses of having acted ineffectively) and to be heard on his underlying claims. But such a defendant might not again seek to withdraw his plea. He could, for example, be enticed by the Commonwealth to leave his plea in place by a recommendation of a lesser sentence or a favorable parole recommendation.

. . . [T]he appropriate remedy is to vacate the judgment but not, at this point, the guilty plea, and to remand for further proceedings as may be required, depending on the action of the defendant.

*Id*. at 390. Based on this holding, Adams proposes that his case should have been continued, conflict counsel should have been appointed, and he should have been permitted to file a written motion setting forth the rationale for his desire to withdraw his plea. The trial court, he went on, should have at least asked Adams about representation issues and how those issues impacted the entry of his plea so that it could have determined whether appointment of counsel was warranted.

Our review of the record reflects that counsel did not clearly articulate the reasons underlying Adams's request, nor did he seek to place Adams under oath for questioning. Therefore, the trial court lacked the information necessary to properly evaluate the motion or determine whether the appointment of conflict counsel was warranted, and we must vacate the judgments.

Counsel advised the trial court that the PSI report was not the basis for Adams's request, and he further intimated that at least part of the request stemmed from Adams's dissatisfaction with counsel's representation. Yet, despite being

-16-

told that ineffective assistance was part of Adams's rationale, the trial court denied the motion without inquiry. This was an abuse of discretion. This is not to say the trial court was obligated to grant the motion or appoint new counsel. Rather, once informed that Adams's request was premised, at least in part, on alleged ineffective assistance, the trial court should have placed Adams under oath and allowed questioning as to his reasons. Without such inquiry, the trial court could not meaningfully evaluate the request.

"[T]he defendant is generally entitled to an evidentiary hearing when it is alleged that the plea was entered involuntarily[.]" *Tigue*, 459 S.W.3d at 387. "The exception to this general rule is that [t]he trial court is free to deny a motion under RCr 8.10 without an evidentiary hearing, if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." *Zapata v. Commonwealth*, 516 S.W.3d 799, 801-02 (Ky. 2017) (internal quotation marks and citations omitted). Here, however, counsel failed to articulate Adams's reasons for wishing to withdraw his plea beyond a cursory sidebar remark that Adams expressed some "dissatisfaction with me."

At that point, the trial court should have placed Adams under oath and questioned him regarding the basis for his request. Without knowing the source of his dissatisfaction, the trial court could not properly determine whether appointment of conflict counsel or an evidentiary hearing was required. While it is

true that the trial court conducted a satisfactory *Boykin* colloquy when accepting the plea, "trial courts must be cautious about denying an evidentiary hearing based solely on a satisfactory *Boykin* colloquy." *Marks*, 555 S.W.3d at 465.

This Court expresses no opinion on how the trial court should have ruled after hearing from Adams. It is entirely possible that Adams, once under oath, may have testified that he simply wished to escape what he viewed as a bad bargain. But it is equally possible that he could have offered a colorable claim of ineffective assistance warranting appointment of conflict counsel and further proceedings. At present, the record is silent and must be developed more fully.

For the foregoing reasons, the judgments of the Letcher Circuit Court are vacated, and these matters are remanded for further proceedings to ascertain the basis for Adams's request to withdraw his guilty plea.

JONES, A., JUDGE, CONCURS.

EASTON, JUDGE, CONCURS IN RESULT AND FILES SEPARATE OPINION.

EASTON, JUDGE, CONCURRING IN RESULT: Because the circuit court had been informed of an issue with representation as part of the oral motion to withdraw the guilty plea, I concur that these cases must be remanded for further proceedings under *Tigue* and *Marks*. But this may be an example of being careful what you ask for. Adams was charged in eleven indictments with dozens of sex crimes against two children. He pled guilty to numerous crimes against both

children.  Yet he was to receive a concurrent sentence of the possible minimum of ten years total.

The voluntariness of the plea, including assessment of ineffective representation, may include considerations of problems each side may have had with the case, such as issues with witnesses or other evidence.  As part of this, the Commonwealth may show good reasons for the leniency shown.  But we should not lose sight of the basic concept that sentences should fit the crimes.  For example, one might wonder in this case of concurrent sentences for these two child victims, which victim did not justify a separate sentence for Adams to serve for his crimes against that child.  "We agree that excessive leniency undermines the sound administration of justice and is a proper factor for a trial judge to consider when evaluating a plea agreement." *Hoskins v. Maricle*, 150 S.W.3d 1, 25 (Ky. 2004).

At this point, we do not know all the circumstances of the plea agreement and all the reasons for its acceptance.  We remand only for the circuit court to evaluate the voluntariness of the plea, understanding that if it was involuntary, then it must be set aside.  If it was voluntary, the circuit court has already accepted it, but the hands of the circuit court should not be tied to prevent rejection of the plea, even if voluntary, after revisiting the circumstances by hearing Adams's motion.  The circuit court may in its discretion reject the plea and proceed with trials of these many cases and charges should the circumstances

presented about the plea support such an exercise of discretion. After such

proceedings, Adams may receive a total sentence of seventy years if convicted.

Adams is asking for precisely that potential result by withdrawing his guilty pleas.


BRIEFS FOR APPELLANT:

Jennifer Wade
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky